By the Court. Duer, Ch. J.—We
are clearly of opinion, that, upon the evidence given on the trial, the plaintiff was not entitled to recover, and that when the parties rested, the complaint ought to have been dismissed, or the Judge should have instructed the jury to render their verdict for the defendant.
It may be admitted, that the moneys arising from the sale of the plaintiff’s goods, so long as they remained in the hands of Schenck, the auctioneer, and could be identified, were as much the property of the plaintiff as the goods of which they were the proceeds. But, if the plaintiff permitted Schenck to treat the moneys as his own, by blending and mixing them with his own funds, or those belonging to other persons, so that they could no longer be traced and identified, he thereby gave credit to Schenck for their amount, and from that time his claim against the latter was in no respect distinguishable from that of an ordinary creditor.
It became, in effect, a loan to Schenck of the sum received by him, payable on demand.
We think that the proof in this case was conclusive, to show that such were the facts. The plaintiff made no demand of the proceeds of his goods when they were received. He was in the employ of Schenck, not merely as his clerk, but as his book-keeper, and sometimes went with the bank-book to make deposits on his account. He, therefore, knew that it was the custom of Schenck to deposit in his own name, and to his own credit, all the moneys that he received from sales, including his own commissions, and to draw upon this common fund, not only for payments to his customers, but for his own personal expenses. With this knowledge he must be deemed to have assented, by his silence, to the deposit that was made of his own funds; and there is no pretence for saying, that the deposit so made created any privity, in law or y in equity, between him and the bank. Its only effect was to *104 make Schenck the creditor of the bank, and himself the creditor of Schenck.
When an auctioneer sells the goods of a principal, under an immediate duty, to pay over the proceeds, if, without the knowledge or assent of his principal, he deposits those proceeds in a bank to his own credit, we do not doubt that a court of equity would interfere and restrain the fraudulent agent from applying the funds to his own use, and would even hold, that the principal was entitled to receive them in preference to other creditors. But where there is no allegation nor proof of fraud, and, a fortiori, when the proceeds of a sale are so deposited with the knowledge and assent of the principal, there is no precedent nor principle that could justify such an interference of a court of equity on his behalf. •
We have, therefore, no difficulty whatever in holding, in the present case, that the whole fund, including the deposit of the moneys of the plaintiff standing to the credit of Schenck on the books of the Union Bank, on the 11th day of January, constituted a debt due to him from the bank, and that the whole title to this debt, both in law and equity, was transferred to, and became vested in the defendant on that day, by force of his appointment as receiver. Notice of his appointment was given to the bank on the 20th day of January; and consequently, if, after that day, the bank had paid to the plaintiff, as holder of the check, or as assignee of Schenck, the sum which he demanded, the payment would have been made, in its own wrong, of money belonging to the defendant and the creditor whom he represents.
We add a few words, to guard against a conclusion, that might otherwise possibly be drawn from our decision. We are not to be understood as saying, that when an auctioneer deposits in a bank, in his own name, the proceeds of goods entrusted to him for sale, with the mere intent, and as the mode of providing for their, safe keeping until their payment shall be demanded, a court of equity would not protect the entire fund for the benefit of the owners of the goods, not only against its misapplication by their agent, but against the claims of other creditors. But where, without any fraudulent intent, or violation of instructions, the moneys are not only placed to the credit of the agent in his general ac *105 count, but that account embraces as well the moneys used by him for his own personal expenses, as the proceeds of goods sold; and all the moneys received by him, from whatever source, are mixed and blended together in their mode of deposit. The sole relation in which he then stands is, that of creditor of the bank, and of debtor to the owners of the goods. Nor have those owners any remedy against him or the funds deposited, except such as may belong to them in common with all other creditors, or may be acquired by their superior diligence.
It remains, only, to notice the exceptions that were taken to the admission of Schenck as a witness, and the rejection of Monaghan, the judgment creditor, upon whose application the defendant was appointed receiver. The first exception is so plainly untenable, that it requires no observations; and we think that the second, for, the reasons that I shall briefly state, was also groundless.
The defendant asserts his title, as receiver, for the sole benefit of Monaghan. His relation to Monaghan is that of an agent, acting under an immediate duty to pay over to him, as principal, the moneys which, as receiver, he is authorized to collect. It is true, he acts under the authority, and subject to the control of the Court or Judge by whom he was appointed; but the right of Monaghan, as the judgment creditor, upon whose application he was appointed to receive the moneys he may collect, is indisputable. Monaghan was, therefore, offered as a witness to prevent the recovery of money to which, if the legal title is adjudged to belong to the defendant, he, as a sole cestui que trust, will be immediately entitled. He was, therefore, properly rejected, according to the decisions in this Court, in Catlin v. Hansen, (1 Duer Rep. 329,) and St. John v. The American Mutual Life Insurance co., (2 Duer, 419).*
*106 It is, perhaps, doubtful, from the form of the case, as before us, whether we have authority, now, to render judgment for the defendant, dismissing the complaint. We think the safest course will be, to set aside the verdict, and order a new trial; but if, upon a second trial, no additional and material facts shall be proved on the part of the plaintiff, the defendant will be entitled to judgment.
New trial ordered; costs to abide the event.

 Is it clear, that Monaghan was rightly excluded as a witness, even conceding that the action was defended for his immediate benefit. If Schenck, a witness for the plaintiff, is the assignor of a thing in action, and that thing in action was the subject of the action, then Monaghan could have been examined in his own behalf, unless he is to be excluded merely because he is not, nominally, a party to the action. If an actual party to the action, and the only person interested as a-defendant, he could have been examined, simply, because the plaintiff had examined the assignor of a thing in action, in a suit to recover the thing so assigned, or its equivalent. (Code, § 399.) But, by § 396, Monaghan’s right to be examined was as perfectas if he had been a party to the action. The plaintiff sought to re *106 cover, partly, by force of the check’s operating as an assignment, and by force of the assignment of $138 of the moneys on deposit, actually made. He gave both in evidence, and proved them, by Schenck, his assignor. Unless it can be said, that he rested his right to recover, solely or substantially, on the ground, that the moneys deposited, to the amount of $138, were his property, because they were the proceeds of his goods, and no claim was made, based on the fact of the assignment, then it would seem that his examination was that of an assignor of a thing in action, and that such examination gave the right to Monaghan to be examined, in his own behalf, to the same matters to which Schenck had been examined. It is proper to observe, however, that there is nothing, in the printed points, furnished to the Court on the appeal, which indicates that any of the views here presented were suggested to the Court on the argument.