## New York Marine Court.

*General Term—December*, 1878.

## EPHRAIM HOWE *against* JAMES H. SHIELS.

The true owner has a right to follow his property or its proceeds, into whatever form the same may have been converted, so long as the means of proving identity remain.

McADAM, J.—This is an appeal by the plaintiff from an order made in a proceeding supplementary to execution, directing the sum of $760, deposited to defendant's credit in the Bowery National Bank, to be paid over as follows : $35 to the referee for his services, $25 to plaintiff's attorney, $276 to the respondent, Thomas Shiels, and the residue to the sheriff of the city and county of New York. The plaintiff, who has a judgment against the defendant, seeks by this proceeding to have it satisfied, out of the money deposited in the bank, to which claim is also laid by the respondents, Thomas Shiels and the sheriff. On a reference ordered to ascertain the facts, it was shown that the entire deposit was composed of rents collected by the defendant, as agent of Thomas Shiels, and moneys received by him as the sheriff's deputy. None of the fund belonged to the defendant personally, nor does it appear that either Thomas Shiels or the sheriff knew of the deposit, or of the form in which it was made, till after the commencement of the supplementary proceedings. Neither does it appear that either of the principals was cognizant of, or at any time assented to,

defendant's use of their money. On this state of facts
the judge below directed the disposition of the fund
already stated, and from his order in that behalf the
plaintiff now appeals.

I think the case clearly falls within the principle so
well stated by Lord Ellenborough, in Taylor v.
Plummer (3 *M. & S.* 562). "It makes no difference in
reason or law," says that eminent judge, speaking of
a principal's right to follow his property or its pro-
ceeds, "into what other form, different from the origi-
inal, the change may have been made, whether it be
into that of promissory notes for the security of money
produced on the sale of goods of the principal, as in
Scott v. Surman (*Willes*, 400), or into other merchan-
dise, as in Whitecomb v. Jacob (*Salk.* 160), for the
product or substitute for the original thing still follows
the nature of the thing itself, so long as it can be ascer-
tained to be such, and the right only ceases when the
means of ascertainment fails."

In Hutchinson v. Reed (1 *Hoff. Ch.* 316), two firms
consigned flour to a factor to be sold on their several
accounts. The factor employed an agent, who made
the sales, after which the factor died, and his adminis-
trators received from the agent the proceeds of the
flour, and deposited them to their own credit. While
in the agent's hands the money had been mingled with
that of the factor ; but before the factor's death the
share belonging to him had all been drawn out.
"Held, upon the merits, that as it appeared that on
the death of R. (the factor) there was not a cent of
money in L.'s (the agent's) hands, belonging to him,
and the fund was traced to have arisen from the sales of
flour, it belonged specifically to the two firms, and did
not go into the general assets. The fact that the funds
of the factor had once been mingled with those of the
owners of the flour in the agent's hand was immaterial,
it being capable of clear proof that all the money be-

longing to the factor had been paid away prior to his death." The case at bar is a much stronger one, for here there is no evidence that the money in dispute was ever confused with the funds of the defendant. But even if it. had been, it was separated before the proceedings were commenced ; for then the entire balance remaining in the bank, it is shown, was made up of the money of the two principals.

The deposit, of course, created between the bank and the depositor the simple relation of debtor and creditor. The specific money deposited became the property of the bank. · But the depositor's claim against the latter, as between the agent and his principals, took the place of his money, just as a promissory note would have done, had the agent lent the money, and taken that· form of security payable to himself, in which case, it cannot be doubted that the principals would have been entitled to the note, or, if collected, to its proceeds (Duston *v.* Perkins, 2 *Pick.* 87).

In Levy *v.* Cavanagh (2 *Bosw.* 100), where the claim of a receiver of an agent's property was preferred to that of a principal, who had assented to the mingling of his own with his agent's money, and to its deposit, thus commingled, to the latter's credit in a bank, and to the agent's drawing checks against it to pay his private debts, and treating it generally as his own, Judge DUER concludes his opinion thus: "We add a few words, to guard against a conclusion that might otherwise be possibly drawn from our decision. We are not to be understood as saying, that when an auctioneer deposits in a bank, in his own name, the proceeds of goods intrusted to him for sale, with the mere intent, and as the mode of providing for their safe keeping until this payment shall be demanded, a court of equity would not protect the entire fund for the benefit of the owners of the goods, not only against its misapplication by their agent, but against the claim

of creditors." It is readily perceived how directly the present case falls within the rule whose efficacy the learned judge was thus careful to avoid impairing, and from whose operation he excepts the case before him on these, among other grounds : (1.) The principal consented to the deposit in his agent's name ; (2.) he knew and acquiesced in the confusion of his own with his agent's money ; and (3.) he permitted the latter to treat the common fund as his own, and apply it to his personal uses. None of these features are discoverable in this case, which is governed by the wholesome rule which Judge Duer takes pains to avoid even the appearance of calling in question. It is not necessary that an agent should have dealt wrongfully with his principal's property to enable the latter to follow it or its proceeds wherever they are traceable. "The remedy of the principal," says Justice Story, in his work on Agency (§ 231), "to recover back his own property, is not confined to cases where there has been some tortious conversion of it. On the contrary, if there has been no misconduct in the agent, the principal is entitled, in all cases where he can trace his property, whether it be in the hands of the agent or his representatives or assignees, or of third persons, to reclaim it, unless it has been transferred *bona fide* to a purchaser without notice."

In any view, I am at a loss to perceive any solid ground on which to place the plaintiff's claim to have the money in question applied upon his judgment. He is not in a position to invoke the aid of any of the rules which, in certain cases, estop the owners of property from asserting their title against innocent third parties. He does not stand in the attitude of a purchaser who has parted with value for something of which it would work injustice to deprive him. And, unless there be some recondite rule of morals requiring one man to pay another's debt, apart from any con-

tract obligation so to do, it is difficult to discover any equitable foundation for the plaintiff's claim.

The order appealed from should be affirmed, with costs.

ALKER, Ch. J., concurs; GOEPP, J., dissents.

See Van Alen *v.* American National Bank, 52 *N. Y.* 1. The right of the lawful owner to follow his property or its proceeds maintained in 5 *Lans.* 416, 519; 61 *N. Y.* 477; 45 *Id.* 387; 22 *Wend.* 285; 4 *Denio*, 327; 32 *Legal Intelligencer (Penn.)*, 169; 24 *N. Y.* 645; 1 *Hilt.* 167; 1 *Parsons on Contracts*, 436.