By the Court. Duer, J.
We are entirely satisfied that the testimony of Mrs. Noyes ought not to have been admitted. Although not a party on the record, she was a party in interest, *428 and under the construction which we have heretofore given to § 399 of the Code, was incompetent, as a person “ for whose immediate benefit the suit was prosecuted.” (Catlin v. Hansen, 1 Duer Sup. C. R., p. 310.) She was a sole cestm que trust, having an immediate right, if not to the whole, yet to a definite portion ($3,500) of the sum that was sought to be recovered.
But although she was improperly admitted as a witness, it by no means follows that, for this reason, there must be a new trials The verdict was taken by consent, subject to the opinion of the court upon the whole case; and if, rejecting her testimony, there is sufficient evidence to sustain it, the plaintiff must still be entitled to our judgment. If we strike out her testimony entirely, as we must do, if this case shall be turned into a bill of exceptions, we are clearly of the opinion, that, upon the proofs that remain, the plaintiff was entitled to a verdict, and that it was the duty of the judge, who tried the cause, so to have charged the jury.
We exceedingly doubt whether any evidence of the right of the plaintiff -to maintain the action in his own name was necessary to be given, other than the assignments endorsed upon the policies. The argument on the part of the defendants was, that the interest on which the insurances were originally founded, that of Charles Hoyes, the assured, in his own life, was certainly extinguished by his assignment of the policies, which, consequently, from that time, became void, as merely wager policies, unless the plaintiff had himself an insurable interest, which was sufficient in law to sustain them. It was conceded, that if the plaintiff had such an interest in the life of Hoyes as would have enabled him to make the insurance in his own name, and for his own benefit, he might, for the protection of his interest, well become the owner of the subsisting policies by virtue of an assignment, and as such assignee be entitled to maintain an action in his own name for the recovery of the loss. It was the existence of such an interest that was alone denied.
It is manifest that the objection rests wholly on the assumption that a wager policy is illegal and void. Such, undoubtedly, is now the law in this State, by force of certain new provisions in *429 the Revised Statutes (1 R. S., p. 662, §§ 8,10), and such is also the law in England, by force of a special act “ for regulating insurance upon lives,” which by express words prohibits such insurances, “ except when the persons insuring have an interest in the life or death of the person insured ” (14 Geo. III., c. 48). There is, however, no evidence before us that such is, or ever has been, the law in Connecticut; and in this State, as well as in England, it has been frequently decided, that at common law a wager policy, as a contract, is just as binding upon the insurer, as a policy upon interest. As the case now stands, we do not know that we have any right to say, that in this respect the rules of the common law have been altered in Connecticut ; and it is by the law of Connecticut that the legal construction and effect of the policies in suit are exclusively governed.
This was admitted, and indeed insisted on, by the counsel for the defendants upon the argument, and is not at all doubted by ourselves.
It is not necessary, however, nor do we deem it expedient, to place our decision upon this ground. In delivering our judgment, we shall assume that when the insurance is upon the life of a third person, an insurable interest in the person for whose benefit the policy was effected, or is held, is just as necessary to be proved by the law of Connecticut, in order to warrant the recovery of a loss, as by the law of this State.
The plaintiff claims to recover, partly on his own account, but chiefly as the trustee of the widow of the deceased, and the question of his right to maintain the action, as such trustee, will be first considered.
That a wife has an insurable interest in the life of her husband is quite certain. It is not denied, and it is needless to cite authorities to prove, that a policy effected by him upon his own life, for her benefit, is a valid contract, nor that a subsisting policy upon his own life, held by him, may be assigned to a trustee for her benefit. In both these cases, if the husband die during the term covered by the policy, the sum insured, in law, or in equity, belongs to the wife, and may be recovered by a suit, either in her own name, or where the trust is express, in that of her trustee. None of these positions are disputed. *430 The only questions that have been raised on this branch of the case relate to the sufficiency of the evidence to prove the interest of Mrs. Noyes, and the right of the plaintiff to maintain the action as her trustee, and if the declarations of trust executed by him were properly admitted in evidence, it is not denied, that these questions are determined, and his right to a judgment for the whole amount, which the trust as declared embraces, fully established.
Of the interest of Mrs. Noyes in one of the policies, No. 2,499, there is conclusive proof, independent of the declaration of trust in relation to it. It appears by an entry in the registry of the company, made at the time this policy was issued, that the insurance was effected by her husband for her benefit. She was, therefore, the equitable owner of this policy as soon as it was issued, and it was delivered to the husband, and held by him, merely, as her trustee. It is manifest, however, that upon this proof alone the plaintiff would not be entitled to recover. On the contrary, as showing Mrs. Noyes to be the real party in interest, she would be a necessary party to the action. Her interest in the other policy is shown only by the declaration of trust which relates to it, and both the declarations were necessary to be proved to show the title of the plaintiff to prosecute the suit alone, as trustee of an express trust.
In our opinion, all the proof of the due execution of these important papers, which the law requires, was given, and this proof, which uncontradicted, was conclusive.
• The testimony of Mr. Waterbury is positive, that both the papers are in the handwriting of the plaintiff, and that they came into his possession from the hands of Mrs. Noyes, although not delivered to him until after the commencement of the suit. As there was no subscribing witness to either of the papers, this evidence was sufficient to prove them to be genuine, and proof that they were so, was all that, in the first instance, could be justly demanded. It was enough to authorize them to be read in evidence.
Upon the trial the counsel for the defendants objected to their reception as evidence, upon the grounds, first, that théy were the evidence of the plaintiff, and second, that there was no evidence of their existence previous to the commencement of the *431 suit. We are persuaded that neither of the objections is tenable. The first, which we find it difficult to understand, was, in effect, abandoned upon the argument before us. If the meaning is, that these declarations of trust were made by the plaintiff with a view to his own benefit, and therefore to be rejected on the same ground as the oral declarations of a party in his own favor, the truth is directly the reverse. His title to both the policies, upon the face of the assignments made to him, was unqualified and absolute, while the effect of the declaration of trust was to show, that nearly the whole beneficial interest was vested in another. The papers were not his evidence, in the sense of the objection, but the evidence of the cestui qm trust. Mrs. Noyes, who, as the person for whose immediate benefit the suit was prosecuted, had the right to insist upon their production. Another short answer to the objection is, that in all cases, where the suit is brought by the trustee of an express trust, his declaration of the trust, whether oral or written, is necessary to be proved in order to maintain the action, and hence to reject the evidence is, in effect, to hold that such an action cannot be maintained at all. Such a decision would be a virtual repeal of the provision in the Code by which the action is given.
To the second objection, that there was no evidence that the declarations of trust were in existence previous to the commencement of the suit, the reply is, that no such evidence was necessary to be given; nor, judging from our own experience, and the uniform practice in this court, can we believe that, in similar cases, such evidence has ever been required. • The rule, we apprehend, to be well established that, when an instrument in writing, to which there is no subscribing witness, is shown to have come from the possession of the party who, according to its terms, has a right to the custody, nothing more is required to be proved, to entitle it to be read in evidence, than the handwriting of the person by whom it purports to have been executed. It is then presumed, that the execution and delivery of the instrument corresponded in time with its actual date, and although this presumption may be repelled by opposite evidence, unless so repelled, it is conclusive.
The declarations of trust, in this case, were the proper evi *432 dence of the title of Mrs. Noyes, as the cestui que trust. She was therefore entitled to their possession, and the circumstance that they were not delivered by her to Mr. Waterbury, until after the commencement of this suit, was too unimportant to justify-a suspicion of an execution and delivery subsequent to their date. We have found nothing in the cases to which we were referred in the argument, at all inconsistent with the views that we have expressed. In the first of these cases, Walton v. Crowley (14 Wendell, 67), it is expressly stated, that the paper which was excluded, was executed during the trial. The bearing df the second case, Farmers' and Mechanics' Bank v. Whinfield (24 Wend. 420), upon the question we are considering, has escaped our discovery.
The declarations of trust being properly in evidence, the necessary consequences are, that the plaintiff, as trustee of an express trust, was entitled to bring the action in his own name, and is entitled to recover for Mrs. Hoyes, as the cestui que trust, the whole sum which, by the terms of the declarations, he agreed to pay her when received from the defendants—that is, the full sum insured by policy 2,499, and $1,500 of the $2,000 covered by the other policy. The only question, therefore, that remains is, whether he is not also entitled to recover, for his own benefit, the balance of $500, claimed to be due on the last mentioned policy ; and, that he is so entitled, we have no difficulty in holding.
It is a mistake to suppose, that the assignment of a policy A upon life, varies in any respect the nature of the original contract, or can operate to discharge the insurer from any part of the obligation, which the terms of the contract impose. By the terms of this policy, the defendant agreed to pay the sum insured to the executors, administrators, or assigns of the assured, within a certain time, after due notice and proof of his death ; and we apprehend, that where such notice and proof have been given, and the assignment is valid as between the parties, the \ right of an assignee to demand and enforce the stipulated payrnent, is no more liable to doubt or dispute, than that of an executor or administrator.
The objection to the recovery in this case, assumes, and such Í was the argument, that there can be no absolute sale of a sub *433 sisting policy, and that its assignment is only valid, when made as a collateral security for an antecedent debt; but as we understand the law,'a written promise tb -pay a sum of money is just as properly a subject of transfer for value, where it depends upon a condition, as where it is absolute, and we can, therefore, make no distinction between the rights of a bond fide assignee of a policy, and those of an assignee of a mortgage. This seemed to us, upon the argument, very clear upon principle, and we have since found that it is equally so- upon authority. The case of Ashley v. Ashley (3 Simons, 140) which was not referred to upon the argument, and whie Chancellor Kent cites and approves (3 Kent’s Com. 370, note), is a positive decision, upon the exact question, in correspondence with the views we have expressed.
In this case, the sum insured upon the life of the person effecting the policy, was £1,000 sterling. He assigned the policy for a small, but valuable consideration, to one Heath, whose executors sold the policy to General Ashley, for £320. Ashley also died; and, in a suit in equity, between his widow and his executors, an order was made that the policy should be sold by a master, for the benefit of the estate. It was sold accordingly ; but the purchaser refusing to accept the title offered, the case was before the court upon a petition to compel him. The objections to the title urged by his counsel were, that the assignment to the first assignee being for a consideration so trifling as to be merely nominal, was wholly void ; or, if valid, that the purchaser, instead of the full sum insured, would only be entitled to recover the amount paid by the assignee. The Vice-Chancellor overruled the objections, holding that the provision in the Act of Parliament, prohibiting insurances by persons having no interest in the life insured, had no application to the assignment of a subsisting policy, but that the assignee in good faith, of a policy upon life, which was good when effected, is entitled, in all cases, to demand payment of the whole sum insured.
This case, therefore, proves not only that the absolute sale of a life policy does not affect the validity of the contract, but that the assignee, for value, in the event of the death of the assured, is entitled to the same remedies as his personal repre *434 sentatives, when the title to the policy is unchanged. It thus furnishes a full answer to the argument, that the recovery of the plaintiff upon his own account, if he is permitted to recover at all, ought to be limited to the sum which he advanced. Had there been no trust, he would have been entitled to recover for his own benefit, without any deduction, the sum insured. It is further to be observed, that an insurance upon life, in the language of Hr. Justice Park, from its nature, admits no distinction between total and partial losses; but, when a loss happens, binds the insurer to pay, according to the terms of his agreement, the full sum insured (2 Park on Insurance, Hildyard ed. p. 493). In other words, the interest of the assured, in every such policy, is valued at the sum insured, and by this valuation, as in a marine policy, both the parties are bound. Hence, it has never been doubted, that a person may insure his own life in as many policies, and for any amount he may deem proper, so as to entitle his representatives to recover the full sum insured in each policy, without any other proof of their loss than that of his death. The contract is still a contract of indemnity, but the only measure of the indemnity promised, is that which thé policy furnishes.
It is true that in England, a creditor, who insures the life of his debtor, can recover no more than the amount of his debt, whatever may be the sum insured ; but this exception to the general rule is created by a special provision in the Act of Parliament, to which we have before referred, and is, as we have seen, not construed to extend to the assignment of a policy effected by the debtor (14 Geo. III. cap. 48, Ashley v. Ashley). There must be judgment for the- plaintiff upon the verdict; but the rate of interest being governed by the law of Connecticut, must be reduced to six per cent.
Judgment accordingly.