JOHN OLMSTED, Re⌐     . MARY L. KEYES et al., Administ⌐    ⌐cc., Respondents.

HELEN M. VOSBURGH, Administratrix, etc., et al., Appellants.

*It seems* that where a person takes out a policy of insurance upon his own life, and the amount is made payable to another having no interest in the life, or where the insured assigns his policy to one having no such interest, the beneficiary or the assignee may hold and enforce the policy, if it was valid in its inception, and was procured or the assignment made in good faith.

In 1846, L. procured a policy of insurance on his life, payable to plaintiff, as trustee for H., the wife of L. H. died intestate in 1857. In 1861, L. married M., and in 1864 plaintiff, upon the request of L., for value received, assigned the policy to M. L. died intestate in 1878, leaving M., his widow, and one child by her, and several children by his first wife, surviving him. He paid the premiums upon the policy up to his death. In an action to determine conflicting claims to the moneys paid upon the

policy, the court found that it was the intention of L., when he procured the policy and paid the premiums, that its avails should go to his widow, if he left one, not to his children. *Held* (MILLER and DANFORTH, JJ., dissenting), that during the life of H. the policy was her property, and upon her death the title vested in L., her husband, as survivor, J. then becoming, by operation of law, his trustee, and the policy continuing valid in his hands; that the assignment vested the title in M., and that she alone was entitled to the moneys paid thereon.

Also *held*, that the common-law right of survivorship, in the husband, in such case, was not affected by the statute in respect to insurance upon the lives of husbands for the benefit of their wives. (Chap. 80, Laws of 1840, as amended by chap. 77, Laws of 1862, and by chap. 821, Laws of 1873.)

*Eadie* v. *Slimmon* (26 N. Y. 9), and *Barry* v. *E. L. A. Society* (59 id. 587), distinguished.

*It seems* that, had the assignment been executed without consideration, it would have been valid and effectual.

(Argued March 8, 1881; decided October 4, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made January 30, 1880, which affirmed a judgment entered upon the decision of the court on trial at Special Term.

This action was brought by plaintiff, as trustee, to determine conflicting claims to a fund in his hands.

The material facts are stated in the opinion.

*Wm. C. Ruger* for appellants. Although the premiums due upon the policy in suit were paid by Lester V. Keyes, he gained no interest in such policy, and no power of disposition over it, by reason of such payment. (*Barry* v. *Eq. L. Ins. Co.*, 59 N. Y. 592; *Wilson* v. *Lawrence*, 13 Hun, 233; affirmed, 76 N. Y. 585; *Brummer* v. *Cohen*, 57 How. 386; affirmed, 58 id. 239; *Fowler* v. *Butterly*, 78 N. Y. 68; Laws of 1840, chap. 80; *Baker* v. *Union Mut. L. Ins. Co.*, 43 N. Y. 286; *Burridge* v. *Row*, 1 Younge & Collyer's Ch. 183; *Lockwood* v. *Bishop* 51 How. Pr. 221.) Lester V. Keyes acquired no title to this policy by reason of his survivorship. (*Barnes* v. *Underwood*, 47 N. Y. 354; Clancey on Husband and Wife, 4; *Gutheridge*

v. *Stillwell,* 1 Milne & Keene, 486; *Fleet* v. *Perrin,* Law Rep., 4 Q. B. 500; *Burnett* v. *Kenaston,* 2 Freeman, 239; *S. C.,* Prec. Ch. 119; *Schuyler* v. *Hoyle,* 5 Johns. Ch. 196; *Hunter* v. *Hallett,* 1 Edw. Ch. 380; *Jenkins* v. *Fryer,* 4 Paige, 46; *Swan* v. *Snow,* 11 Allen, 224; 2 Bishop on Married Women, § 46; 2 R. S. 75, § 30; *McCrosker* v. *Golding,* 1 Bradf. 64; 2 Kent's Com. 135, 136; Bright on Husband and Wife, 36; *Brown* v. *Bokee,* 9 Rep. 683, 684, 685; *Duberly* v. *Day,* 16 Beav. 44; *S. C.,* 5 House of Lords Cases, 388; *Belcher* v. *Hudson,* Cro. Jac. 223; *Gage* v. *Acton,* 1 Salk. 326; *Dalbiac* v. *Dalbiac,* 16 Ves. 116; *Purdew* v. *Jackson,* 1 Russell, 26; *Sale* v. *Sanders,* 24 Miss. 24.) A policy of life insurance regulated by the provisions of chapter 80 of Laws of 1840, and the laws amendatory thereof, is not assignable, but constitutes a species of property created by law to provide for a state of widowhood and orphanage. (*Eadie* v. *Slimmon,* 26 N. Y. 17; *Barry* v. *Eq. L. Ass. Co.,* 59 id. 592; *Barry* v. *Brune,* 71 id. 261.) A mere relinquishment of a trust or of trust property, which does not purport to convey the property to some person authorized to receive it, does not discharge a trustee. (Perry on Trusts, §§ 274, 920; *Dick* v. *Pitchford,* 1 Dev. & Batt. Eq. 480; *Diefendorf* v. *Spraker,* 10 N. Y. 246; *Gilchrist* v. *Stevenson,* 9 Barb. 9; *Brennan* v. *Wilson,* 71 N. Y. 502, 506; *Webster* v. *Vandeventer,* 6 Gray, 428; *Cruger* v. *Halliday,* 11 Paige, 314; *Pearce* v. *Pearce,* 22 Beav. 248; *Sugden* v. *Crusland,* 3 Smale & Giff. 182; *Chalmers* v. *Bradley,* 1 Jac. & W. 68.) Upon the death of Huldah Keyes, her children became entitled to this policy by force of the statutes regulating it. (*Eadie* v. *Slimmon,* 26 N. Y. 9; *Barry* v. *Eq. L. Ins. Co.,* 59 id. 562; *Schelling* v. *Accidental Death Ins. Co.,* 27 Law Jour., Exch., 16, 19; Sedgwick on Statutory Const. [2d ed.] 214; *Coutant* v. *People,* 11 Wend. 513; *McAffee* v. *Southern R. R. Co.,* 36 Miss. 669; *Swan* v. *Snow,* 11 Allen, 224; *Livingston* v. *Bishop,* 51 How. Pr. 221, 225.) The term "assured" means the person for whose benefit the insurance is obtained. (*Smith* v. *Ætna L. Ins. Co.,* 5 Lans. 545; *Campbell* v. *N. E.*

*Life Ins. Co.*, 98 Mass. 381; *Hogle* v. *Guardian L.'Ins. Co.*, 6 Robt. 567.) The plaintiff, receiving the money as trustee of and for Huldah Keyes, cannot question her title thereto, and is bound to pay it to her legal representative or the succeeding beneficiaries of the trust. (*Smith* v. *Bolden*, 33 Beav. 262.)

*Charles M. Baker* for plaintiff, respondent. This action was properly brought. (*Dorr* v. *Fox*, 51 N. Y. 268; *Aymer* v. *Gault*, 2 Paige, 284; *Richards* v. *Salters*, 6 Johns. Ch. 445.) It was not necessary that the plaintiff should wait until one of the claimants proceeded against him before bringing the action. (*Richards* v. *Salters*, 6 Johns. Ch. 445; *Redfield* v. *Sup'rs*, *etc.*, Clarke's Ch. 43; *Morgan* v. *Marsack*, 2 Meriv. 107.) Plaintiff should have the right to ask the directions of the court how to pay the money, and should not be compelled to pay out his own money to obtain a decision as to the ownership of a fund in which he is not interested. (*Thomson* v. *Ebbetts*, Clarke's Ch. 272.) The appellants should not now be allowed to claim that the action was improperly brought, neither of them having demurred to the complaint, and neither of them having questioned plaintiff's right to bring the action, either by answer or upon trial; but, having litigated their claims upon the fund up to the time of appealing without raising that objection, they should be deemed to have thereby waived it. (*Aldridge* v. *Mesner & Whitechurch*, 6 Ves. 418.)

*Richard C. Steel* for respondent Mary L. Keyes. When Huldah Keyes died her children acquired no rights in the policy in suit. (Laws of 1840, chap. 80, § 2; Laws of 1858, chap. 187; Laws of 1862, chap. 70; Laws of 1866, chap. 656; Laws of 1870, chap. 277; Laws of 1873, chap. 821.) Upon her death her husband succeeded to her rights. (*Ransom* v. *Nichols*, 22 N. Y. 110, 112; *Whitaker* v. *Whitaker*, 6 Johns. 119, 120; Bishop on Law of Married Women, § 177; *Moehring* v. *Mitchell*, 1 Barb. Ch. 264; affirmed, Ct. of App., 4 How. 292; *Comm.* v. *Unity Ass. Co.*, 117 Mass. 339.) The assignment of Olmsted, trustee, to defendant Mary L. Keyes, made by direction and procurement of Lester V. Keyes, after

the death of Huldah, was effectual and vested the policy in Mary L. Keyes. (*Chowne* v. *Baylis*, 31 Beav. 351.)

EARL, J. On the 9th day of July, 1846, the Mutual Life Insurance Company of New York issued a policy of insurance upon the life of Lester V. Keyes to the plaintiff, John Olmsted, as trustee for Huldah Keyes, the wife of Lester, whereby, in consideration of annual premiums to be paid by such trustee, it agreed to pay to him, upon the death of Lester, the sum of $1,000. From the date of the policy to his death Lester paid the annual premiums. Lester and Huldah had several children who are defendants in this action. She died intestate in November, 1857, and thereafter, in August, 1861, Lester intermarried with the defendant Mary L. Keyes, and in August, 1864, the plaintiff, upon the request and direction of Lester, for value received, assigned to Mary L. all his right, title and interest as trustee of and for Huldah Keyes in the life policy with all the advantages to be derived therefrom, and due notice of the assignment was given to the insurance company. In January, 1878, Lester died intestate, leaving surviving him Mary L. his widow, and one child by her, and all the children of his first wife, with one exception. In the same month the defendants Burdick and Mary L. Keyes, the widow, were appointed administrators of Lester. In due time the necessary proofs of the death of Lester were made to the insurance company and it thereupon paid to the plaintiff the amount due upon the insurance policy, to wit, the sum of $1,811, which sum was in the hands of the plaintiff at the commencement of this action. Since the commencement of this action, Helen M. Vosburg, one of the children of Huldah, has been duly appointed the administratrix of her estate and as such administratrix she was made a party defendant in this action.

This action was commenced to determine the conflicting claims of the various defendants to the money paid to the plaintiff upon the policy. The foregoing facts were found at the Special Term and it was there also found that it was the intention of Lester, when he procured the policy and paid the

premiums thereon, that the avails of the policy should go to his widow, if he left one, and not to his children ; and the court at Special Term found as conclusions of law that during. the life of Huldah Keyes the policy was her property, and at her death vested in her husband as survivor, and that John Olmsted then became, by operation of law, *his* trustee ; that the assignment of the policy by Olmsted, as trustee, by the direction of Lester, vested complete title thereto in Mary L. and that she was the sole owner of the policy at the time the money was paid to the plaintiff and is solely entitled to such money. The judgment entered upon the Special Term decision was affirmed at General Term, and the appeal to this court brings before us for determination the question, who is entitled to the money received by the plaintiff upon the policy ?

This policy was taken out by Lester, for the benefit of his wife. It was an insurance upon his own life for her benefit. While one cannot insure a life in which he has no interest, every person can insure his own life for any sum upon which he can agree with an insurance company. A life insurance is not like fire insurance, a contract of indemnity, but a mere contract to pay a certain sum of money on the death of a person in consideration of the due payment of a certain annuity for his life. (*Dalby* v. *The India and London Life Assurance Co*, 28 Eng. Law & Eq. 312 ; *Rawls* v. *American Life Ins. Co.*, 36 Barb. 357 ; *S. C.*, 27 N. Y. 282 ; *Ins. Co.* v. *Bailey*, 13 Wall. 616.) Like every other contract to pay money such a policy is a chose in action with all the ordinary incidents of every other chose in action. It is abundantly settled in this State, that one who takes an insurance upon his own life may make the policy payable to any person whom he may name in the policy, and that such person need have no interest in the life insured, and that if the policy be valid in its inception, the party taking it may assign it to any person as he could assign any other chose in action, and that the policy will continue valid in the hands of the assignee, although he has no interest whatever in the life insured. So a creditor

may take out a policy on the life of his debtor, and the policy will continue valid although the creditor has been paid and has thus ceased to have an interest in the life of the insured. In *Ashley* v. *Ashley* (3 Simons, 149), A. insured his life and afterward assigned the policy to B. for a nominal consideration; B.'s executors then sold and assigned the policy to D. for a nominal consideration, and then D.'s executors sold it to E.; and it was held that they could make a good title to the policy, and that E. was bound to complete his purchase. This case was cited and approved in 3 Kent's Com. 370, note, and has since been cited with approval in several reported cases in this State. In *St. John* v. *The American Mutual Life Ins. Co.* (2 Duer, 419), DUER, J., a judge very learned in the law of insurance, writing the opinion, held that an assignment of an insurance policy to one having no interest in the life insured was valid, and he said: "The objection to the recovery in this case assumes, and such was the argument, that there can be no absolute sale of a subsisting policy, and that its assignment is only valid when made as a collateral security for an antecedent debt; but, as we understand the law, a written promise to pay a sum of money is just as properly a subject of transfer, for value, where it depends upon a condition, as where it is absolute; and we can, therefore, make no distinction between the rights of a *bona fide* assignee of a policy and those of an assignee of a mortgage." He then cited the case of *Ashley* v. *Ashley,* and further said: "This case, therefore, proves not only that the absolute sale of a life policy does not affect the validity of the contract, but that the assignee for value, in the event of the death of the assured, is entitled to the same remedies as is his personal representative when the title to the policy is unchanged." This case was affirmed in this court (13 N. Y. 31), and the doctrine was there again announced that a valid policy of insurance effected by a person upon his own life is assignable, like an ordinary chose in action. CRIPPEN, J., writing the opinion of the court, said: "I am not aware of any principle of law that distinguishes contracts of insurance upon lives from other ordinary contracts, or that

takes them out of the operation of the same legal rules which are applied to and govern such contracts. Policies of insurance are choses in action, and are governed by the same principles applicable to other agreements involving pecuniary obligations." And he further said: "I do not agree with the counsel of the defendant, that the assignee must have an insurable interest in the life of the assured in order to entitle him to recover the amount of the insurance. If the policies were valid in their inception, the assignment of them to the plaintiff did not change the liability of the company." In *Valton* v. *The National Fund Life Assurance Company* (20. N. Y. 32), it was held that one who has obtained a valid insurance upon his own life may dispose of it as he sees fit, and that it is immaterial that the assignee has no interest in the life. In *Rawls* v. *American Life Insurance Company* (*supra*), it was held that it is not necessary that a party holding a policy on the life of another should have an insurable interest in such life at the time of the death to make the policy valid, if it was valid in its inception. (See, also, *Clark* v. *Allen*, 11 R. I. 439 ; Law of Assignments of Life Policies, by Hine & Nichols, 73, 75, 81 ; Bliss on Life Ins. [2d ed.], §§ 23, 26, 30.)

The rule, as gathered from these authorities, is that where one takes out a policy upon his own life as an honest and *bona fide* transaction, and the amount insured is made payable to a person having no interest in the life, or where such a policy is assigned to one having no interest in the life, the beneficiary in the one case and the assignee in the other may hold and enforce the policy if it was valid in its inception, and the policy was not procured or the assignment made as a contrivance to circumvent the law against betting, gaming and wagering policies. It follows, therefore, that one may, with the consent of the insurer, deal with a valid life policy as he could with any other chose in action, selling it, assigning it, disposing of it, and bequeathing it by will, and it has been well said that if he could not do this life policies would be deprived of a large share of their utility and value.

Therefore, but for the statutes which will hereafter be noticed,

it cannot be doubted that during the life-time of Huldah, the sole beneficiary named in the policy, she could have made a valid assignment of her interest therein to any person, and she could have disposed of her interest by will. It is true that her interest ceased at her death, but, as shown above, the policy, being valid in its inception, continued valid in the hands of the person or persons who legally took her estate. It was a contract to run until Lester's death. There was no provision in the policy that it should become void upon Huldah's death before her husband, and such a result could not have been contemplated by the parties when they entered into the contract. The policy became more valuable as the years rolled by, and at the time of Huldah's death had considerable pecuniary value, and I know of no principle of law applicable to the business of insurance which requires us to hold that her death destroyed such value. Death no more destroyed such value than an absolute divorce would, and yet it cannot be doubted that a policy held by a wife upon the life of her husband continues valid although her interest in his life has ceased in consequence of a divorce. (Bliss on Life Ins., § 30.) When she died intestate, therefore, this policy remaining a valid pecuniary obligation, her interest therein went where her other choses in action, if she had any, went.

The general rule of the common law is that the husband may, during the joint lives, reduce his wife's choses in action to possession, and thus appropriate them to his own use, or he may release them or assign them so as to bar the wife's right of survivorship. (Reeves' Dom. Rel. [B. & B.'s ed.] 55, etc.; Clancy's Hus. and Wife, 109, etc.; *Schuyler* v. *Hoyle,* 5 Johns. Ch. 196; *Westervelt* v. *Gregg,* 12 N. Y. 202.) But during the joint lives the husband cannot assign or release, so as to bar the wife, surviving, her choses in action, payable after his death, or upon contingencies or at times which do not come or happen until after his death. In such cases, however, his assignment is good as against the whole world but his wife surviving. In *White* v. *St. Barbe* (1 Ves. & B. 406) the master of the rolls said that a husband can dispose of his wife's property in expectancy

against every one but the wife surviving. All the choses of the wife not reduced to possession during the joint lives, by the common law, passed to the husband upon her death — all without any exception — and there is no authority to the contrary; and this is true whether such choses are then payable or are mere reversionary or contingent interests payable at a future day, or mere possibilities. He may then release them or take payment of them without administration, if he can get payment. (*Ransom* v. *Nichols*, 22 N. Y. 110.) If administration is needed to reduce the choses to possession, he is entitled to it, and if there are no debts the administration is solely for his benefit. If, after his wife's death, the husband does not release, assign or reduce to possession her choses in action during his lifetime, then after his death his personal representatives are entitled to administration upon them for the benefit of his estate as part of his assets. (Bishop on Marr. Women, § 177; *Westervelt* v. *Gregg, supra.*)

Now to apply these principles to this case. The wife's interest in this policy was a chose in action. At her death it passed to her husband. He then caused it to be assigned to his second wife, the defendant Mary L., and thus, within the meaning of the law, he reduced it to possession. The assignment was valid as against him and was therefore valid as against the whole world. The written assignment is expressed to have been for value received, and in the absence of proof to the contrary must be assumed to have been, but whether it was for a valuable consideration or not it was good as against him, and that is sufficient, as the rights of a surviving wife are not in question. If the chose in action had been a note payable at his death his assignment thereof would have been valid, and for precisely the same reason his assignment of this policy was valid.

There is no case which holds that a life policy for the benefit of the wife, her husband surviving, passes, by the rules of the common law to her personal representatives for the benefit of her estate, to the exclusion of her husband. On the contrary, it was said by the chancellor, in *Moehring* v. *Mitchell* (1 Barb. Ch. 264; affirmed in the Court of Appeals,

4 How. Pr. 292) that a policy upon the life of the husband for the benefit of the wife, in a case where the wife died first, and then the husband, passed, like other choses of the wife, to the personal representatives of the husband. In that case, the general rule as to the survivorship to the husband of the choses of the wife was applied to a policy of insurance taken by her upon his life. Even if it were true that, upon the death of Huldah, this policy could remain valid only in the hands of some person having an interest in the life insured, here it passed to her husband and then to his second wife, and both had an interest in the life insured. There is no question here of administration upon the estate of Huldah. As stated above, such administration would have been, if necessary, there being no debts owing by her, solely for the benefit of her husband; and as the money has been paid upon the policy, the sole question is as to the person or persons entitled thereto.

The statutes of this State, in respect to insurances upon lives of husbands for the benefit of wives, must now be considered. The first is chapter 80 of the Laws of 1840, section 1 of which made it lawful for a married woman to cause the life of her husband to be insured, and provided that, in case she survived her husband, the amount of the insurance should be payable to her, to and for her own use, free from the claims of the representatives of her husband or of any of his creditors; but that such exemption should not apply where the amount of premiums annually paid should exceed $300. Section 2 provided that, in case of the death of the wife before the decease of her husband, the amount of the insurance might be made payable after her death to her children for their use, and to their guardian, if under age. It may be assumed that this policy was taken out under that act, and yet it will not aid these appellants.

Section 1 secures the amount of insurance to the wife only, in case she survives her husband. Here she did not survive her husband. There is nothing, therefore, in that section to take away his common-law right in the amount insured as survivor.

Section 2 confers no right upon the children of Huldah, because the amount of the insurance was not, by the terms of the policy, made payable to them after her death. The statute does not make it payable to them after her death, but simply provides that it may be made payable to them. The subsequent amendments of this chapter make it more certain that this is the proper construction of section 2. The first amendment of the act of 1840 was by chapter 187 of the Laws of 1858, but that amendment did not touch section 2, and, therefore, has no bearing upon the questions now under consideration. Section 2 was amended in 1862 by chapter 77, and was made to read as follows : " The amount of the insurance may be made payable in case of the death of the wife before the decease of her husband to his or to her children for their use as shall be provided in the policy of insurance, or to their guardian if under age." Under the section as thus amended, it is clear that the amount of the insurance cannot be claimed by the children of either the wife or the husband unless it is provided in the policy that it shall be payable to them. In 1866, by chapter 656, section 2 was again amended so as to read as follows :

" The amount of insurance may be made payable, in case of the death of the wife before the period at which it became due, to her husband or to his, her or their children for their use as shall be provided in the policy of insurance, and to their guardian, if under age." Here again it is provided that the policy must determine to whom of the persons named payment shall be made. In 1873, by chapter 821, section 2 was again amended, and the section, as amended, provided that a married woman holding a policy for her benefit or for the benefit of herself and her children might surrender such policy to the company issuing the same in the same manner as any other policy ; and also provided that in case she had no issue she might dispose of such policy by will or by deed, which disposition should invest such person or persons, to whom the policy had so been bequeathed or granted and conveyed, with the same rights in respect thereto as such married woman would

have had in case she survived the person on whose life such policy was issued, and such legatee or grantee should have the same right to dispose of such policy as therein conferred on such married woman.

I can see nothing in all this legislation which gives countenance to the idea that, by virtue of section 2, as enacted in 1840, the children of Huldah obtained any right in this policy, the insurance not having been made payable to them in any event. If it had been the intention of the law-makers that the amount should be absolutely payable to them, in case of the death of their mother before the decease of her husband, they would have so provided in plain terms, as was done in Massachusetts (*Swan* v. *Snow*, 11 Allen, 224), instead of providing that it might be made payable to them.

There was nothing decided in *Eadie* v. *Slimmon* (26 N. Y. 9) in conflict with any views herein expressed. All that was decided there is that a policy of insurance to a married woman, made under the Laws of 1840, for her benefit and that of her children in case of her death, could not be transferred so as to divest the interest of the wife or of her children. In that case the insurance was upon the life of the husband for the sole use of his wife, and in case of her death before him, for the use of her children. There was nothing in the statute of 1840 which expressly prohibited the assignment of such a policy; but it was held that it would be a violation of the spirit of that act to hold that a wife could sell or traffic with her policy, as though it were realized personal property or an ordinary security for money. It is stated in the opinion of Judge DENIO, that that statute looks to a provision for a state of widowhood and for orphan children; and so it does. It provides that a married man may effect an insurance upon his life for the benefit of his widow, and also for the benefit of his children; but the provision need not be for both unless he chooses to make it so. When the learned judge said that "by the general rules of law a policy on the life of one sustaining only a domestic relationship to the insured would become inoperative by the death of such insured in the life-

time of the *cestui que vie,*" he certainly fell into error, as shown above ; and it is clear that he did not feel certain of the proposition thus announced, because he followed it by this language : " Or, if it should be considered as existing for any purpose after that event, it would be for the benefit of the personal representatives of the insured." The latter alternative is sufficiently correct. He says the personal representatives of the insured, not the children. The husband, in the event stated, would be entitled to administration, and would thus become the sole representative of his wife, and, as shown above, the administration would be solely for his benefit in the absence of debts of the wife ; and under such circumstances he could release, assign or discharge a policy without administration. In *Barry* v. *Equity Life Assurance Society* (59 N. Y. 587) the insurance was again for the benefit of the wife, and in case of her death before her husband, for the benefit of her children ; and the decision in the case of *Eadie* v. *Slimmon* was simply reaffirmed.

It is said, however, that because the wife could not assign this policy, and because the husband could not control it during her life-time, in consequence of the statute of 1840, therefore the common-law right of survivorship to the husband was also destroyed. It is difficult to see how this conclusion follows. The statute went so far, and limited the right of the husband during her life, but it went no further. When Huldah died the statute ceased to operate upon the policy, and then the common-law right of the husband became operative. I know of no principle, and there certainly is no authority holding that the husband must have the right to dispose of his wife's choses in action during her life, in order to reduce them to possession or control them after her death. (*Ransom* v. *Nichols, supra.*) So far as the statute interfered with his common-law right in reference to this policy, it was gone. In all other respects his common-law rights remained.

Lester took out this policy, and paid the premiums thereon for about eleven years, to make a provision for his first wife in case she survived him. He then continued the insurance after

his second marriage, and paid the premiums for about seventeen years for the purpose of making a provision for his second wife in case she survived him. That there are no rules of law which require that that purpose shall fail, and that the money paid upon the policy shall be distributed to the adult children of the first wife, to the exclusion of the second wife and her minor child, I think I have sufficiently shown.

The judgment should, therefore, be affirmed, with costs.

FOLGER, Ch. J., ANDREWS and FINCH, JJ., concur; DAN-FORTH and MILLER, JJ., dissenting; RAPALLO, J., absent at argument.

Judgment affirmed.