By the Court.—Sedgwick, Ch. J.
Four of the policies assigned by the plaintiff were in terms payable to her executors and administrators, and not in any contingency to children. These choses in action were her separate property. In equity, she had exclusively the power of disposition of her separate property in general, when it was personal, if the grant of it to her or perhaps the nature of her interest in it did not express or imply a hmitation of her power of disposition. Seymour v. Fellows, 77 N. Y. 178 ; Rawson v. Penn. R. R. Co., 48 N. Y. 216, and other cases; Olmsted v. Keyes, 85 N. Y. 593. The statutes of this state give a legal power of disposition of separate property to a married woman. If there be a doubt of whether these statutes comprise the case of a gift of the husband to the -wife, there is no doubt, that in equity, she has the same power over such gifts, as over any other kind of separate property.
In the instance of a¡ policy of insurance of the life of a husband, payable to the wife, the premiums being paid by the husband, there would be a question as to whether the nature of the gift as a provision for the wife after the husband’s death, did not limit her power to dispose of it, in her lifetime. Beyond this, as against creditors, the husband would have no right to use his money in payment of the premiums, if such use were fraudulent as to the creditors.
The statutes on the subject of these insurances, make it legal 'and not fraudulent as to creditors, for the hus *308 band to take out these policies to a certain amount, or for the wife to take them out, the premiums to a certain amount to be paid out of the husband’s property. These statutes make no provision as to the wife’s power of disposition. They declare that the policies, in favor of the wife, shall be her sole property.
The courts have held in Eadie v. Slimmon, 26 N. Y. 15, and in the cases that follow it, that it was an implied intent of the statutes, that the wife should not assign insurances taken out under the statute.
Since the act of 1873, ch. 821, p. 1235, the statutes do not imply this intent in respect of a policy, made payable to the married woman and in which children have no legal or equitable interest. In such a policy the wife during life is solely interested. Olmsted v. Keyes, supra. If a married woman, provided she have no children living at the time, can assign a policy payable to her and partly or contingently to children, there can be no room for arguing that the implied prohibition against assigning when there is a child living, is made for her benefit. The benefit to children which the statute relates to, is of the slightest possible kind. There is no provision which contemplates that the widow on death of the husband shall use for the benefit of children any part of the money, her sole property collected from the policy.
The doubt that the latter part of the section was intended to apply to policies that are payable to the married woman and children, or to her or children, and not to policies payable to her alone, cannot be entertained under the decisions as I understand them.
In Brummer v. Cohen, 6 Abb. N. C. 409, the policy was made payable to the wife, or her executors, administrators or assigns. There were children living at the time of the action and these children were in being at the time of the assignment. The court, in first instance, held that the policy was unassignable and that as the plaintiff had children at the time she assigned the policy to the defendant, the act of 1873, chap. 821, did not help *309 the assignment. The Court of Appeals said in the case, “ The legislature in conferring by subsequent acts a limited power of assignment, have recognized the policy, attributed to the legislation of 1840. Ch. 821, Laws of 1873, chap. 248, Laws of 1879. The assignment in this case was not within the authority conferred by these acts.
It is proper to state here that it may be assumed that the statute of 1873, intended that there should be no assignment without its execution being acknowledged by the married woman, as at the time was necessary to a conveyance to pass her dower right.
If there is no difference between this case and that of Brummer v. Cohn, the plaintiff here had a right to a judgment, that the assignment made by her was invalid. In the present case the difference of fact is, that while at the time of the assignment there were children, they had afterward died and before the action.
Was it possible for her to make a valid arrangement, which might bind her, which would not operate during the lifetime of the children, but upon their death would operate as an assignment ? It seems clear that in their lifetime she had a property interest in the policy, which in its nature was assignable. There was no objection to her making any grant of her interest which would not contravene the intent or policy of the statute, which was that she should remain in possession of her interest while any child was living. But she could not make any instrument, on its face a grant, which would operate as a grant during the lifetime of the children. The plaintiff did make an instrument which on its face was an assignment. If after the death of the children she should re-affirm this and then procuring the piece of paper on which the chose in action was written, deliver it to the assignee named, there would be no doubt in the case. The instrument would be at least what is called a precedent declaration, which would be effective as a grant upon the policy coming to the assigned after the *310 death of children. McCaffrey v. Woodin, 65 N. Y. p. 462 et seq. The notes to Ryall v. Bowles, W. & T. Leading C. in Eq. 2 vol. 1611, illustrate this principle.
It is assumed that during the life of the children she might by act or verbally, annul the instrument, so that it would cease to be effective. The judge below found that on or about the 29th day of May, 1880, and at several other times before the commencement of this action, the plaintiff demanded the re-transfer and re-delivery of the said policies to her. The testimony shows that the demand referred to, was made by the husband of the plaintiff. He did not use the word demand. He asked for the policies and said it was about time they were given up—about time they were surrendered. The connection in which this testimony was given shows that this was not a denial, of the efficacy of the assignment, but a claim that the purpose for which it had been given, as security, had been fulfilled. The policies were to be surrendered because the debt, to secure which they were assigned, as the witness assumed, had .been paid. There was no other demand made until July, 1884, after the death of the children.
The facts were, as the judge has found, that the consideration of the assignment was the assumption by the defendant of the obligation of the husband, and the assignment was made as security for the defendant’s reimbursement of any sums he should pay, under the assumption; that the defendant had paid on account of these obligations, for which he had not been reimbursed, a sum exceeding the face value of the policies, that is, $14,100.
It is the fact that after the death of the children, the policies were not re-delivered to the defendant. They remained from the assignment, in the possession of the • defendant. If they remained so for any time with the plaintiff’s consent, under his claim to them, the assignment became finally operative. The taking and giving them again, would have been a mere form. It is not *311 necessary to decide that the defendant could not, against the wish of the plaintiff, have held the policies and subjected them to the operation of the assignment. So far as that is referred to by the testimony the indications are that the plaintiff assented to the possession by the defendant under the assignment, after the death of the children. These indications are the nature of the assignment which was never revoked or recalled during the lifetime of the children; the not revoking the assignment and the moral obligation on her part growing out of thé payments made by the defendants, as she had in fact requested, which would be a motive to her to assent to his holding the policies after the death of' the children. The presumption of fact would be that she acted in accordance with the motive until there was evidence that she ceased to be influenced by it. In June, 1884, she first made a demand. From January, 1882, no child was living. The inference is that in the intervening time, she had assented to the claim of the defendant and that the policies were then effectually assigned.
The facts that have been stated disclose that the policies were not assigned as security for an antecedent indebtedness of the husband to the defendant, but for. money, that the defendant should thereafter pay on account of the husband’s indebtedness.
Another policy was payable to the plaintiff “ for her sole use if living, in conformity with the statute, and if not living to the children of said person whose life is hereby insured, or their guardian for their use.” The statute that has been examined, does not say and probably does not imply, that an assignment by the wife, at the time when there is no "child living, would cut off the interest in the policy, which by the terms of the contract might belong to a child, after the death of the husband and born after the assignment. It permits in the case . provided that the wife may assign. The interest passing would be such as would be ascertained by her living after her husband’s death. The reasoning that *312 has been applied to policies payable solely to the wife is properly applicable to this policy. The assignment of it became operative when there was no living child, and the policy remained thereafter in the hands of the assignee, with the consent of the wife.
For these reasons 1 am of opinion there snould be a new trial.
Judgment reversed and new trial ordered with costs to abide the event.
Freedman, J., concurred.