# THE UNITED STATES MUTUAL ACCIDENT ASSOCIATION OF THE CITY OF NEW YORK

*v.*

# HODGKIN.

---

LIFE INSURANCE; INSURABLE INTEREST; ESTOPPEL.

1. A person may effect an insurance on his own life for a friend; and where the policy has been taken out in good faith and without the knowledge of the beneficiary, who has paid no premiums or assessments, it is not invalid because the beneficiary has no insurable interest.
2. Any reasonable doubt which may arise as to the meaning or intent of a condition in a policy of insurance, is to be resolved against the insurer.

3. Where in his application, an insured described his proposed beneficiary as one "whose relationship to me is that of a friend," the insurance company, whose directors had the power to change at pleasure the conditions of insurance and classes of beneficiaries, cannot defeat a recovery on a policy issued on such application on the ground that the policy contains a condition that "all claims under this contract shall be subject to proof of insurable interest."

4. Such a policy is valid as against the insurer, whether the beneficiary named be entitled to its benefits or not.

No. 356. Submitted October 19, 1894. Decided November 23, 1894.

HEARING on a bill of exceptions by the defendant in an action on a policy of insurance. *Judgment affirmed.*

The COURT in its opinion stated the case as follows:

This is a suit upon a combined accident and life policy of insurance. The appellant, The United States Mutual Accident Association of the City of New York, is what is called a mutual benefit association, which pays the beneficiaries of its policies, or more correctly speaking, its certificates of membership, through a system of assessments made upon members. Frederick W. Uber made a formal application for membership, and the certificate was issued to him in due form October 3, 1891. This contains the ordinary provisions found in accident policies for payment of certain sums, varying in amount with the character of the accident, and so forth, and concludes with this stipulation: "Or if death shall result from such injuries alone, and within ninety days, the association will pay $5,000 to R. Maud Hodgkin, of Falls Church, Va., or in the event of her prior death or refusal to accept the same to C. E. Uber (his brother), or in event of their prior death, according to the by-laws." The application for membership was made in the form required by the association, and is, by express stipulation, made a part of the certificate or policy. Following the name of the beneficiary, R. Maud Hodgkin, designated therein, is the following representation, "whose relationship to me is that of a friend."

The certificate was issued subject to a number of conditions endorsed thereon, the only one of which that need be stated is the following: "All claims under this contract shall be subject to proof of insurable interest."

The object of the association, as stated in the first article of the by-laws, is, "to collect and accumulate a fund to be held and used for the mutual benefit and protection of its members (or their beneficiaries), who shall have sustained, while members of the association, bodily injuries whether fatal or disabling, effected through external, violent and accidental means." The by-laws require the board of directors to exercise general supervision of the business; to prescribe the form and manner of applications for, and the conditions of membership; to prescribe forms and measures for determining qualifications, eligibility, etc., of applicants; to decide on all claims, and to order assessments to pay losses, etc.

Sec. 2 of Article VII of the by laws relating to "indemnity, assessments and dues," reads as follows: "The board of directors shall prescribe the nature and amount of indemnity for the various kinds of injuries, whether fatal or disabling, and the terms and conditions upon which payment of indemnity shall be made. The terms and conditions of payment, other than as provided in these by laws, shall be specified in and made a part of each certificate of membership." The second clause of this section further provides that in the event of the death of the beneficiary or beneficiaries, payment shall be made, first, to the wife and children, or the survivor of them, of the deceased member, and second, to his next of kin in the order as provided for the distribution of the personal property of deceased intestates by the laws of New York, " except where the member shall otherwise direct in his application for membership, or in and by his last will and testament."

All payments required under the certificate were paid by

Frederick W. Uber, and nothing was ever paid by the beneficiary named in the certificate.   It does not appear that the plaintiff knew anything of the transaction until after the death of Uber, who was accidentally drowned June 14, 1892, when the certificate was delivered to her by one Timmins, a friend of Uber, with whom it had been left by Uber to be delivered to the plaintiff, R. Maud Hodgkin, in the event of his death.   Miss Hodgkin did not decline the benefit of the policy, but furnished proofs of loss and made demand for payment, which was refused.

A jury was waived, and the cause submitted to the court, who gave judgment for the plaintiff, from which this appeal has been taken.

*Mr. John B. Larner* for the appellant:

1. There are authorities without number, including the Supreme Court of the United States, in the case of *Insurance Co.* v. *Schaefer*, 94 U. S. 460, which hold that a person has an insurable interest in his own life, and can make the policy payable to anyone, without reference to the beneficiary's interest in his life.   This we admit as being true, but only for the one purpose, namely, of supporting the policy as against the company.   If the policy be for the benefit of one who has no insurable interest in the life insured, it is as much a wager as if the policy were taken out by the beneficiary himself, and he can only take the proceeds of the policy to the extent of his interest, whatever that may be.   *Eq. Life Assurance Soc.* v. *Hazlewood*, 75 Tex. 338, Bk. 7 L. R. A. 217.

2. The policy sued on in this case was issued by the association subject to the condition that all claims under it should be subject to proof of insurable interest.   This condition was annexed to the policy, and, not being unreasonable, is just as binding as any other condition contained in the policy.   The existence and proof of insurable interest was a condition precedent to recovery under the certificate, and

the appellee had no right to demand payment or to commence suit to enforce her alleged claim until she had complied with this condition. *Miller* v. *Ins. Co.*, 2 E. D. Smith,. 268 ; *Scott* v. *Roose*, Long. & Towns. 54.

3. When the association issued the certificate to Uber it was not required to determine whether the beneficiary might or might not have at some future time an insurable interest. in his life. That question could only be determined when the certificate became a *claim*. The condition expressly states that all *claims* shall be subject to proof of insurable interest. Independently of this, it is submitted that the association would have been justified in assuming that there existed between the parties some relation giving the beneficiary an insurable interest in Uber's life. It would have been a fair inference from Uber's application that there existed an engagement of marriage. Had such a relation existed the claim would have been promptly paid, on the theory that the beneficiary had such an interest in Uber's. life as would entitle her to the proceeds of the certificate. Cooke on Life Insurance, 100; *Chisholm* v. *Nat. Cap. Co.*, 52 Mo. 213. It is unnecessary to state the extent of the interest of the beneficiary in the body of the policy, and in the absence of any condition in the policy to that effect the nature or extent of the interest need not be set out; but in case of loss, where no interest is described, the beneficiary will not be entitled to recover except on proof of interest. Am. & Eng. Ency. of Law, Vol. XI, 320, and cases cited.

4. The condition requiring proof of insurable interest. manifestly applies to the interest of the beneficiary.

*Mr. Irwin B. Linton* and *Mr. J. J. Darlington* for the appellee cited :

*Lamont* v. *Grand Lodge*, 31 Fed. R. 177 ; *Bloom. Assn.* v. *Blue*, 120 Ill. 121, 129 ; *Chisholm* v. *Nat. Cap. Co.*, 52 Mo. 213 ; *Mut. Ben. Assn.* v. *Hoyt*, 46 Mich. 473 ; *Delano* v. *Butler*, 118 U. S. 634 ; *Robertson* v. *Smith*, 11 Tex. 211 ; *Belt* v. *Mehem,*

2 Cal. 159; Pollock on Contracts, 392, and note *c*; Lawson on Contracts, Secs. 206–8; Benj. on Sales, 306; *Wiggins* v. *Knights*, 31 Fed. R. 122; *Manson* v. *Grand Lodge*, 30 Minn. 509–12; *Ins. Co.* v. *Schaeffer*, 94 U. S. 460; *Scott* v. *Dickson's Admr.*, 108 Pa. St. 6; *Olmsted* v. *Keyes*, 85 N. Y. 593; *McFarlan* v. *Creath*, 35 Mo. App. 112; *Burkhardt* v. *Ins. Co.*, 102 Pa. St. 262; *Bank* v. *Ins. Co.*, 95 U. S. 673; *Berkeley* v. *Harper*, 3 App. D. C. 308; *Campbell* v. *Ins. Co.*, 98 Mass. 381, 389; Bacon's Benefit Soc. and Life Ins., Sec. 249.

Mr. Justice SHEPARD delivered the opinion of the Court:

The sole ground of defense made by the company is based upon the want of "insurable interest" in the plaintiff.

This contract has none of the ordinary features of what are called speculative or wager policies. It was not applied for or taken out at the request or instigation of the beneficiary. She paid no assessment, and was apparently ignorant of the existence of the policy until it matured. It was the insured's own voluntary act for reasons known only to himself. The beneficiary was not related to him, she was not his betrothed; she was simply that which he called her in making the designation—a friend. In the course of a general discussion of the question of insurable interest in a policy of regular life insurance, Mr. Justice Bradley, speaking for the Supreme Court of the United States, said: "There is no doubt that a man may effect an insurance on his own life for the benefit of a relative or friend; or two or more persons on their joint lives, for the benefit of the survivor or survivors. The old tontines were based substantially on this principle, and their validity has never been called in question. The essential thing is, that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the insured has no interest."

As said by the Supreme Court of Massachusetts: "It is the interest of the assured in his own life that supports the

policy. The plaintiff did not by virtue of the clause declaring the policy to be for her benefit, become the assured. She is merely the person designated by agreement of the parties to receive the proceeds of the policy upon the death of the assured." *Campbell* v. *Mut. Life Ins. Co.*, 98 Mass. 381. See also, *Olmsted* v. *Keyes*, 85 N. Y. 593; Cooke on Life Ins., Sec. 60, and cases cited. This doctrine is also subject to the qualification that the policy was not procured in this manner as "a contrivance to circumvent the law against gaming and wagering policies." *Olmsted* v. *Keyes*, *supra.* We think, therefore, that the defendant has no right to defeat the policy on the general ground that it is invalid because the beneficiary designated therein had no insurable interest in the life of the deceased member.

It remains now to consider the special defense relied on by the defendant, which is founded on the condition endorsed on the certificate, that, "All claims under this contract shall be subject to proof of insurable interest." As it is plain that the plaintiff had no "insurable interest," as that term is applied in law, in the life of the member, the contention is that she is barred by the foregoing condition. It cannot be claimed for this association that it was wholly without power to permit certificates to be issued for the benefit of persons having no insurable interest, as there is no such restriction in the articles of association or the by-laws, or in any law authorizing its organization, as was the case in *American Legion of Honor* v. *Perry*, 140 Mass. 580 ; and other cases which might be cited. On the contrary, the general purposes of the association as set forth in Section 3 of Article 1, of the by-laws, quoted above, would plainly warrant the inference that its charity was to be unlimited, save by the act or declaration of the member himself. This inference, too, is strengthened by the language of Section 2, Article 7, which provides that the fund shall be paid "to the person or persons whose names shall at the time of the death of said member be found recorded as his last designated

beneficiaries;" and further that in case of the death of the designated beneficaries, the fund shall go, first, to the wife and children, if any, of the member, and second, to the next of kin as defined in the statute of distribution of the State of New York, unless the member shall have otherwise directed by will.   It is a general rule of construction of policies of insurance also that any reasonable doubt which may arise as to the meaning or intent of a condition thereof, will be resolved against the insurer.   From the last of the foregoing provisions of the by-laws (without regard to the original designation) it appears that two ways were provided by which the benefit of the policy might possibly accrue to persons who had no insurable interest in the life of the member.   He might bequeath the benefit to strangers, or in case of failure of bequest it might go to "next of kin" who would have no insurable interest.   If intended that the benefit should, in such cases, also, be "subject to proof of insurable interest," it would seem to be just that this should be made plainly to appear, and in the absence of the restriction the presumption should be to the contrary.   The by-laws of the association are set out in full in the record, and we find nothing in them qualifying or restricting the operation of the provisions aforesaid.

But it is claimed, and we think justly, that the board of directors were empowered by the by-laws to change the conditions of insurance from time to time, and insert the new ones in the certificates or policy as issued.   In the exercise of this power it does not appear that the directors made or recorded any change in the old by-laws.   They simply exercised the power in adding to the certificate in controversy the condition with respect to the proof of insurable interest. Conceding the meaning claimed for this condition, as well as the power to insert it in the policy, it does not follow that the defense thereon founded can be maintained.   The circumstances of the transaction estop the association from

claiming the benefit of this condition. For if the directors had the unquestioned power to change the conditions of insurance and the classes of beneficiaries at pleasure, in the general form of certificates or policies adopted, they had the same right to make a special contract with a member that might be a change from the new conditions also. They had adopted, we will grant, a general form of policy conditioned against the claim of any beneficiary who could not prove an insurable interest; but under the circumstances they must be held to have made a different contract with Frederick W. Uber. He was, we will say, presumed to know the provisions of the by-laws and articles of association when he became a member. *Walsh* v. *Ætna Life Ins. Co.*, 30 Iowa, 133–144; *Sup. Lodge K. P.* v. *Knight*, 117 Ind. 489. Under these, however, as we have seen, he had the right to infer that he could name, as beneficiary, one who might not have an insurable interest in his life. In the application which was required, he designated R. Maud Hodgkin as his beneficiary, and described her distinctly as one " *whose relationship to me is that of a friend.*" Here was a proposition to become a member of the association upon a distinct and unequivocal condition that the person designated by him—who clearly had no insurable interest in his life—should receive the benefit in the event of his death while a member. The application is in the form required, and is expressly referred to and made a part of the policy. This proposition was received, considered and accepted by the directors, who received the required fee and extended the certificate of membership. There was no misrepresentation and no mistake. This is no case of waiver by an unauthorized agent. It is the act of the association itself, and ought to estop it to say that the acceptance was upon a condition utterly at variance with the proposition for membership, and which would render the certificate wholly inoperative as regards the express intent of the assured. By this deliberate act the association must be presumed to have changed their new rule, and to

have gone back to the plan contemplated by the by-laws for the express purpose of receiving this applicant into their membership. Uber lived and paid his dues under this presumption; he was careful to leave the policy so that it would be delivered in event of his accidental death to the beneficiary, and died believing that he had made a valid contract for her benefit.

To avoid the effect of this situation, the defendant sought to introduce proof that its officers received the impression from the description of the beneficiary, and acted thereon, that she was betrothed to the member, and error has been assigned on the exclusion of this proof. Had the proof been admitted it cannot be seen how the defendant would have been benefited, because it has generally been held that one occupying this relation to the insured has no insurable interest.

But the proof was clearly inadmissible. If the directors were misled by these words they have themselves alone to blame. The word *friend,* in its real, usual and well understood meaning, is one of the best and noblest in the language, and it is inconceivable that Uber could intend to mislead by its use. If the directors really attached a meaning to the word that is wholly unauthorized, they must suffer the consequences of their inexcusable mistake.

By what has been said with respect to the character of this policy and the right of the beneficiary to recover as against the association, we are not to be understood as undertaking to determine that the benefit of the policy accrues to the plaintiff as against others not before the court, who might assert the invalidity of her title and seek to claim the reversion of the policy. If the defendant had admitted the validity of the policy, but denied plaintiff's right to the proceeds thereof for want of insurable interest, it could easily have protected itself against expensive and troublesome litigation through a bill of interpleader.

Irrespective, therefore, of the question whether plaintiff is

the absolute owner of the proceeds of the certificate or not, she must recover in this action as maintained, because the policy, not being within the rules against wager policies, would not be void, even if the designated beneficiary could not take anything thereunder for her own benefit for want of insurable interest. The policy being a valid contract, the unauthorized designation only would fail, just as if she and the other beneficiaries had died, and the real interest therein would, under the by-laws, vest in the deceased's "next of kin," as defined in the New York statute of distribution. *Rindge* v. *N. Eng. Mut. Aid Soc.*, 146 Mass. 286; *Keener* v. *Gr. Lodge, A. O. U. W.*, 38 Mo. App. 543. In the last case the society was an association authorized by statute for " the relief and aid of the families, widows, orphans and other dependents of deceased members." The member designated as his beneficiary a woman whom he maintained, and who bore to him the relation of concubine, though she called herself and he designated her in the application as his wife. He had a living wife at the time who also survived him. The wife and the designated beneficiary each claimed the fund realized from the policy. It was held that the beneficiary could not take under the purposes of the association as defined in the statute; but the policy was not void, and the widow was entitled to recover under a clause thereof, similar to the one in the policy here sued on, just as if the designated beneficiary had died before the member. See also *Britton* v. *Royal Arcanum*, 46 N. J. Eq. 102; *Palmer* v. *Welch*, 132 Ill. 141; and *Schonfield* v. *Turner*, 75 Tex. 324, where it was said that the person designated, if not entitled to the benefit of the certificate, would be, if necessary, regarded as a trustee for the persons really entitled thereto. See also *Warnock* v. *Davis*, 104 U. S. 775, where the same principle is applied.

We find no error in the judgment appealed from, and *it is therefore affirmed, with costs to the appellee.*