LOCKWOOD and SLEIGHT, ex'rs, &c. *vs.* STOCKHOLM and others.

Where real estate is devised, charged with the payment of a legacy, no action at law will lie against the devisee for the legacy, unless he has promised to pay the same, or has done some act from which a promise to pay can be implied; but if he neglects or refuses to pay the legacy the court of chancery will give the proper relief to the legatee.

Under the provisions of the revised statutes, if the husband survives his wife and afterwards dies leaving a debt uncollected, which belonged to her at the time of her death, his personal representatives are authorized to sue for the debt without taking out letters of administration upon her estate.

Where the husband survives his wife, her personal estate of every description, except such separate estate as she has made a valid disposition of by will, under a power for that purpose, belongs to him, under the statute of distributions. And if he intermeddles with her property without taking out letters of administration on her estate, the statute renders him liable for the payment of her debts.

If the property of the deceased wife comes to the hands of the personal representatives of the husband who survived her, such property in their hands is liable for the debts of the wife in preference to the debts of the husband due at the time of his death.

Where the names of the father and the son are the same, and both reside in the same place, and it is doubtful to which of them the conveyance of a farm was in fact given, and the father devises the farm to the son, charged with the payment of several legacies, the subsequent payment of some of the legacies by the devisee, without objection, is presumptive evidence that the conveyance of the farm was to the devisor, and not to the devisee.

THIS was an appeal by Abraham Sleight, one of the defendants, from a decree of the vice chancellor of the second circuit. The bill was filed by the executors of W. Rider, deceased, who survived his wife, to recover the one fourth part of a legacy given to Mrs. Rider, the sister of the appellant, by the will of her father; which one fourth part of the legacy was charged upon a farm devised to the appellant by such will. The principal ground of defence set up by the appellant was, that the farm was his, and never belonged to his father, but was actually purchased and paid for by the appellant himself, and that the deed was taken in his own name.

Lockwood v. Stockholm.

*S. Barculo,* for the appellant.

*H. Swift,* for the respondent.

THE CHANCELLOR. Upon a full examination of all the testimony in this case, I have no doubt that the defence set up by the appellant, that the farm never belonged to the testator, was not true in fact. In the first place, it is wholly improbable that the father, in apportioning his real estate among his four sons, would devise this farm to the appellant by such a description, if he had not himself purchased it; although I have no doubt that he actually intended, at the time of such purchase, to let the son have the use of it, and to devise it to him by his will, charged with a proper portion for the sisters. This will account for all the testimony as to the appellant being the active man in making the bargain. He was also, most probably, the agent of the father, in his lifetime, in making the payments upon the bond and mortgage. It is not improbable also, that the appellant furnished some part of the funds, either to make the payment of one half of the purchase money at the time of the purchase, or for the first instalment on the bond and mortgage. And it was probably for that amount that the bond of the 1st of January, 1800, for $1000 was given. The language of the will is such as to admit of no doubt. And unless the father intended to insert a wilful falsehood in his will, without any apparent reason for so doing, he must have been the purchaser of this farm from the Allgetts. He devises it by this description: "I give, devise, and bequeath unto my son Abraham Sleight, and to his heirs and assigns forever, all that farm *now in his possession,* which *I bought* of Jacobus Allgett, Adam Allgett, John Allgett, and his two sisters." At the time the deed from these Allgetts was given to Abraham Sleight, for the farm, in May, 1800, there were three Sleights in the town of Fishkill, bearing the Christian name of Abraham—the father, son, and grandson; the father, a man somewhat advanced in life, the son, who was married some fifteen or sixteen years before, and the grandson, then a boy but thirteen years old, as appears by the testi-

Lockwood *v.* Stockholm.

mony.  The father had been a magistrate.  The son lived some 12 or 13 miles from him; and was not, as I presume, called by the addition of junior by his neighbors, who were unacquainted with the father.  The grandson was too young, at that time, to need any addition, as he could not have had any business to transact requiring a suffix to his name. The only occasion he would have to write his name, therefore, would be in his writing books; where some of the witnesses saw it written Abraham A. Sleight.  It is wholly improbable that this boy was taken to the place where the papers were executed to be a witness to them.  And even if the appellant was in the habit of omitting the junior to his name in transactions in his own neighborhood, it would be a matter of course to add the junior when witnessing the deed given to his father, who bore the same name; and in witnessing the mortgage executed by his father.  That the father and son and grandson knew how to distinguish the one from the other, when necessary, appears by the bond executed by the father to the son, three years afterwards, and witnessed by the grandson.  In that bond the father, the obligor, is described as Abraham Sleight senior; the son, the obligee, as Abraham Sleight junior; and the grandson, who signed it as the subscribing witness, and who was then sixteen years of age, signs his name Abraham A. Sleight.  Again, the mortgagor, in the mortgage given at the time of the execution of the deed, is described as Abraham Sleight, Esq.; which would be a proper suffix to the name of the father at that time, but not to the name of the son, who witnessed the deed and the mortgage, and signed his name Abraham Sleight junior.  The testimony of the appellant's son satisfies me, beyond all doubt, that his father, and not the boy who three years afterwards signs his name Abraham A. Sleight, was the person who actually witnessed these two instruments.  And the fact that he so witnessed them renders it incredible that he or any other person, at that time, supposed that he was the grantee intended in the deed, or the mortgagor described in the mortgage as Abraham Sleight, Esq. of Fishkill.  The parts of the name which are left, of the signatures of the obligor and mortgagor in the bond and mort-

Lockwood v. Stockholm.

gage, I am also satisfied, from the testimony, were not written by the appellant.

The fact that the appellant paid his fourth of the legacies to his sister, Mrs. Cook, and to his niece, Mrs. Ruger, which legacies were also charged on the farm thus devised to him, is wholly inconsistent with the supposition that the farm was conveyed to himself originally, and that the appellant received nothing under the will of his father. These witnesses, too, so contradict some of the material parts of the appellant's answer, as to discredit such answer; so that no reliance can be placed upon any part of it, as evidence in the appellant's favor. It appears also, by the documentary evidence, that the appellant claimed and received from his brothers only their several proportional parts of the bond of £400 to himself and of the bond due from the decedent to Van Wyck. This is also inconsistent with the idea that he received nothing under the will. For if that were so, he would not have been likely to pay the one fourth part of the debts himself, instead of leaving the devisees of the testator's estate to pay them. And from the testimony, I infer that he was not a man of such unbounded liberality as to volunteer to pay one fourth of his father's debts and legacies when he believed he was under no legal or equitable obligation to do so.

The statute of limitations was no bar. The legatee was a feme covert when the legacy became due and payable, four years after the death of the testator; and of course the remedy was not barred as to her at the time of her death, in December, 1826, even if an action at law could have been sustained for this legacy without any promise to pay it. The defendant swears that he never did agree to pay any part of the legacy, and that he never paid the interest thereon. If so, there never was a remedy at law. The testimony, however, shows pretty satisfactorily, that he not only agreed to pay the interest to his sister, but that he did pay some part of it at least. It is, however, doubtful whether he ever agreed to pay the principal, to her or to her husband. Although the law may not raise an implied promise to pay, in such a case, so as to enable the legatee to bring an action, yet if this court is satisfied that the legacy is still due, it must give the

proper relief to the legatee. The proof shows that both before and after the death of Mrs. Rider, the appellant admitted that this legacy was unpaid. Neither the six years' limitation previous to the 1st of January, 1830, as set up in the answer, nor the ten years' limitation previous to the filing of the complainants' bill, could therefore avail the appellant in this suit.

Nor is the objection that the complainants have not sued out administration de bonis non on the estate of the wife of their testator, as the legatee, a valid objection to this suit. Previous to the revised statutes the husband could not have sustained a suit for a legacy, or debt, due to his deceased wife before coverture, without administering upon her estate; nor could his representatives maintain such a suit, after his death, without suing out letters of administration de bonis non on her estate. But in the recent case of *Rosevelt, adm'r, v. Ellithorp and others,* (10 *Paige's Rep.* 415,) I came to the conclusion that where the husband survived the wife and afterwards died, the revised statutes authorized his personal representatives to sue for a debt due to his estate on account of, or in right of his deceased wife, without administering on her estate also.

The personal property of the wife, of every description, except her separate estate which she makes a valid disposition of by will under a power of appointment, belongs to the husband under the statute of distributions, where he survives her. And the only object in requiring letters of administration on her estate is to have some responsible person who may be answerable to her creditors, if there should be any. If the husband intermeddles with the deceased wife's estate, without taking out letters of administration, the revised statutes make him liable for her debts; upon the presumption that he has assets belonging to her estate to pay them. But if the husband survives the wife and dies, either before or after taking out letters of administration on her estate, leaving any assets of his wife unadministered, the statute directs that they shall pass to his executors or administrators, "but shall be liable for her debts to her creditors in preference to the creditors of the husband." (2 *R. S.* 75, § 29.) If the only object of this provision was that the property of the wife,

which unquestionably belonged to the representatives of her husband, who had survived her, should go to the representatives of the husband after paying her debts, provided they, or some other person, administered on her estate specially, the last clause giving her creditors a preference is wholly senseless. And I have no doubt that the legislature intended, in such a case, that the personal representatives of the surviving husband, in their character of such representatives, should acquire the right to her whole property unadministered, and should have power to sue for and recover it as such representatives of the surviving husband. But after the assets have been recovered by them they must so administer them as to give her creditors a preference in payment out of that part of the estate; although it comes to them in the character of the personal representatives of the husband. There were two questions of some doubt existing before the revised statutes: 1st. Whether the assets of the wife were liable for her debts, where her husband survived her, or were to belong absolutely to the husband's representatives, as a part of his personal estate; 2d. Whether his representatives, or the next of kin of the wife, were to administer on her estate. And both questions were put at rest by giving the property directly to his representatives, as a part of his personal estate; but chargeable in their hands with her debts, to the extent of that part of the fund. The representatives of the surviving husband, therefore, are the proper persons to sue for and collect debts or legacies, &c. due to the wife at the time of her decease; and they and their sureties are answerable to her creditors for the application of the fund according to this section of the statute.

The decree appealed from must be affirmed, with costs.