LOUISA O. W. BUTLER, AS EXECUTRIX, ETC., TRUSTEE, AND ALLIE L. SPERBECK, AN INFANT, BY HER GUARDIAN AD LITEM, RESPONDENT, *v.* STATE MUTUAL LIFE ASSURANCE COMPANY OF WORCESTER, APPELLANT, IMPLEADED, ETC.

*Insurance policy — payable to one party in trust for another — right of the party, whose life is insured and who pays for the policy, after delivery thereof to the trustee, to have a power inserted to substitute a new trustee — effect of paying the loss, after the death of the original trustee, to a substituted trustee — right of the legal representatives of the original trustee to recover the amount from the company.*

In an action brought to recover upon a policy of life insurance upon the life of Andrew H. Adams, it appeared that, in his application therefor, Adams answered the question "For whose benefit is this insurance?" as follows: "Rev. Jeremiah Butler of Fairport, New York, in trust for Allie Lee Sperbeck." The policy insured the life of Andrew H. Adams "for the use of Rev. Jeremiah Butler of Fairport in the State of New York, in trust for Allie L. Sperbeck of Fairport aforesaid, to the amount of $2,000 for the term of his life." Adams delivered the policy to Butler shortly after its receipt by him, but about a year afterwards had it again in his possession for a short time, and at that time applied to the company for a change therein which would authorize him to appoint

a new trustee in case of the death of Jeremiah Butler. Adams then delivered the policy to the agent of the company who procured the application to be sent to him by the defendant, and, with the consent of Adams, added to the answer to the question "For whose benefit is this insurance?" the following: "Or in the event of the death of the said trustee during the lifetime of the insured, he shall appoint a trustee to fill the place of the deceased." Thereupon the application and policy were returned to the home office of the defendant, and thereafter the policy was again delivered to Adams, who delivered it to Butler, who retained it until his death in July, 1880, when his executrix finding the policy, by Adams' direction, returned it to him. Adams thereupon applied to the company for a substitution of Miss Sperbeck's mother as trustee in Butler's place, and requested defendant to make such substitution, which it did.

Adams died in June, 1881, and thereupon the substituted trustee claimed the insurance money. A law suit ensued which was compromised by the payment of $1,372 in full. Thereupon the policy was surrendered to the company by Mrs. Adams for cancellation.

The executrix of Jeremiah Butler, who knew of Adams' death immediately after it occurred, but never made any claim to the insurance until after the payment to the substituted trustee, in making which the defendant acted in good faith, brought an action, nearly five years after this settlement, to recover the amount of the insurance upon the theory that the appointment of the substituted trustee after Jeremiah Butler's death was unauthorized.

*Held,* that upon the delivery of the policy to the beneficiary designated therein, the contract was executed; the beneficiary's interest became vested; the appointment was irrevocable, and the company's obligation fixed, and it could not be thereafter altered without the consent of the beneficiary.

That the beneficiary was not bound by any act of Adams done after the delivery of the policy to the beneficiary, unless such act was in violation of some condition of the policy.

That, as there was no reservation in the policy of the right to make a fresh appointment upon the death of the trustee named therein, Adams' power in this respect ended upon the delivery of the policy to Butler.

That, as the statute of Massachusetts provided that the insurance money should, in the event of Butler's death, be paid to his personal representatives, it was not necessary to appoint a new trustee.

Appeal by the defendant from a judgment entered, after a trial before the court at a Special Term held in the county of New York, in the office of the clerk of the county of New York, on the 27th day of July, 1889, by which judgment it was determined that the surrender or attempted surrender by the defendant, Amelia B. Rapier, of policy No. 10983, mentioned and described in the complaint, and made and issued by the defendant, State Mutual Life Assurance Company of Worcester, on the life of

Andrew H. Adams, was unauthorized and void; and that said policy was in full force and effect, and that plaintiff recover of defendant, State Mutual Life Assurance Company of Worcester, Massachusetts,. $2,697.38, the amount of said policy, including interest, besides costs.

*Edward E. Sprague*, for the appellant.

*Oliver P. Buel*, for the respondent.

Barrett, J.:

Andrew H. Adams applied to the defendant's agent for insurance upon his life. In his application he answered the question "For whose benefit is this insurance?" as follows: "Rev. Jeremiah Butler of Fairport, New York, in trust for Allie Lee Sperbeck." Miss Sperbeck was and still is an infant, not related to Adams. He described her in the application as "*protegé.*" Upon this application, the policy was issued and delivered to Adams.

This policy reads as follows: "This policy of assurance witnesseth,. that the State Mutual Life Assurance Company of Worcester, in consideration of the representations made to them in the application therefor, and of the sum of seventy-six dollars and ninety-two cents. to them paid by Andrew H. Adams of Chicago, in the county of Cook, and State of Illinois, and of a like sum to be paid to them or their agent duly authorized on or before the first day of May at noon, in each year during the term of this policy, do insure the life of Andrew H. Adams of Chicago, in the county of Cook, and State of Illinois, for the use of Reverend Jeremiah Butler of Fairport, in the State of New York, in trust for Allie L. Sperbeck of Fairport, aforesaid, to the amount of two thousand dollars, for the term of his life."

Shortly after the receipt of the policy, Adams delivered it to Butler, but about a year afterwards, Adams again had it in his possession for a short time, and while it was so in his possession, he applied to the company for such a change therein as would give him the right to appoint a new trustee upon Butler's death. Upon this head the learned judge at Special Term found as follows:. "That in May, 1879, the said Adams applied to the defendant, through its agents at Chicago, for such a change in the policy as should give to said Adams the right to appoint a new trustee in case

of the death of said Jeremiah Butler during the lifetime of said Adams; and the said Adams thereupon delivered the said policy to the said agent for the purposes of such change; that said agent procured said application to be sent to him by defendant from its home office in Worcester, and with the knowledge and consent of said Adams, added to the answer to the question, 'For whose benefit is this insurance?' the following, 'or in the event of the death of said trustee during the lifetime of the insured, he shall appoint a trustee to fill the place of the deceased.' That said agent thereupon returned said application, together with the original policy, to the home office of the defendant, and the said policy was again delivered to the said Adams from the home office."

After this change was made, Adams again delivered the policy to Butler, in whose hands it remained until his (Butler's) death, which occurred in July, 1880. The plaintiff, Mrs. Butler, was, on the 27th of September, 1880, appointed Butler's executrix. She found the policy among her husband's papers. She subsequently wrote to Adams, " What shall I do with that life insurance policy?" He replied, " Return it to me," and she did so. Thereupon, in March, 1881, Adams applied to the company for a substitution of Miss Sperbeck's mother (whom he had previously married) as trustee in Butler's place. Upon this the learned judge found as follows :

" That upon the death of the said Jeremiah Butler the said Adams appointed Amelia B. Adams as trustee in place of Rev. Jeremiah Butler, deceased, and notified defendant of such appointment and requested defendant to make such substitution; and defendant thereupon, by resolution of its board of directors, did substitute said Amelia B. Adams in place of Jeremiah Butler, deceased, as such trustee. That at the time of such substitution said Andrew H. Adams had possession of said policy."

Adams died in June, 1881, and thereupon the substituted trustee, Mrs. Adams, claimed the insurance money. The company disputed the claim upon grounds other than her right to sue. A law suit ensued which was compromised in September, 1882, by the payment of $1,372 in full, and thereupon the policy, which in the meantime had been in Mrs. Adams' hands, was surrendered to the company for cancellation.

The plaintiff Mrs. Butler knew of Adams' death immediately after

it occurred, but never made any claim to the insurance until after the payment by the defendants to Amelia B. Adams, nor did she know of such settlement and payment until subsequently informed thereof by the company. The defendants acted in good faith in making this payment. It was made without actual knowledge of the plaintiff's claim, and the settlement with Mrs. Adams was a just and fair compromise of a disputed claim. Nearly five years after that settlement the plaintiff brought this action, and she has recovered upon the theory that the appointment of Mrs. Adams as a new trustee after Butler's death was unauthorized, and that the company is still bound, under the terms of the policy, to pay the insurance money to the "legal representatives" of Jeremiah Butler in trust for Allie L. Sperbeck, and thus to the plaintiff as Butler's executrix. The plaintiff is also the general guardian and guardian *ad litem* of the beneficiary.

We concur in the conclusion arrived at by the Special Term upon these facts. The contract of insurance was undoubtedly with Adams. He insured his own life for the benefit of this child. The child had no insurable interest in Adams' life, and consequently neither she nor Butler, in trust for her, could have taken out a valid policy upon Adams' life. It was entirely competent for Adams, however, to insure his own life and thereupon to assign the policy to a designated beneficiary. He could either do this or he could designate the beneficiary in the policy itself. In the latter case, upon delivery of the policy to such designated beneficiary, the contract was executed, the beneficiary's interest became vested, and the appointment was irrevocable. The company's obligation reads as follows :

" And the said company do promise and agree to pay to Reverend Jeremiah Butler aforesaid, in trust as aforesaid, his legal representatives, at their office in Worcester, in lawful money of the United States, the said sum of two thousand dollars, in sixty days after presentation of satisfactory proof of the death of said Andrew H. Adams, any indebtedness to this company on account of this policy being first deducted therefrom."

Upon the delivery of the policy to Butler the contract took effect as an agreement between the company and Butler in trust, and it could not thereafter be varied in any particular without the consent

of the beneficiary. And here such consent could not have been given as the beneficiary was an infant. The effect of the transaction was precisely the same as though the policy had in its inception run to Adams alone, and upon an assignment thereof by Adams to Butler, in trust, the latter had procured the company's promise to pay him, to be indorsed upon his assignment. It has been authoritatively held that where a person takes out a policy of insurance upon his own life, and the amount is made payable to another having no interest in the life, or where the insured assigns his policy to one having no such interest, the beneficiary or the assignee may hold and enforce the policy. (*Olmsted* v. *Keyes*, 85 N. Y., 593.)

In the case at bar, the company had notice of their own agreement to pay Butler as trustee, and in case of his death to pay his legal representatives. That was before them upon the face of the contract when Adams asked them to alter their obligation, so that, upon Butler's death, they should pay to some one other than Butler's legal representative. They could not thus affect the beneficiary's vested rights. The beneficiary was not bound by any act of Adams done by him after the delivery of the policy, unless, indeed, such act was in violation of some condition of the policy. (*Fitch* v. *Am. Pop. Life Ins. Co.*, 59 N. Y., 573.) The promise to pay Butler's "legal representative" was nothing more than a promise to pay as required by law. For, before the act of 1882, it was well settled that a trust of personal property devolved (on the death of the trustee) upon the trustee's personal representative. (*Wetmore* v. *Hegeman*, 88 N. Y., 72; *Bunn* v. *Vaughan*, 5 Abb. Pr. [N. S.], 269; *Boone* v. *Citizens' Savings Bank*, 84 N. Y., 83.) As there was no reservation in the policy of the right to make a fresh appointment upon the death of the trustee named therein, Adams' power in this respect ended with the delivery of the policy to Butler. Thereafter the legal effect of the transaction was left to the law. Even Butler could have made no agreement, after his acceptance of the trust, which would have affected the vested rights of the beneficiary. Any attempt to do so would have been a violation of his trust. There can be no estoppel in such a case. The defendants knew what their legal obligation was. They knew that they had agreed to pay to Butler in trust for Allie Sperbeck. They knew, also, that in case of her death, they had agreed to pay to his legal representa-

tives. They were also bound to know that that was their legal duty, even if they had not expressly so covenanted. The possession of the policy by Adams thus had no legal significance. It was entirely natural that he should have it and that he should pay the premiums thereon from time to time. The company knew from the very terms of the instrument that the gift was executed and irrevocable.

They were certainly put upon inquiry as to whether the policy had been delivered to the contract appointee before permitting Adams to change the legal process of devolution. But, upon the facts appearing in the record, it is not necessary to place our judgment upon the latter proposition, for the defendants *admit* that *they* caused the policy to be delivered to Butler. This appears from the absence of any denial, in the answer, of the fourth paragraph of the complaint, which reads as follows:

IV. That thereupon the defendant corporation caused said policy to be delivered, and it was duly delivered through said Adams to said Jeremiah Butler, and was thereafter held by said Jeremiah Butler, in his possession as trustee as aforesaid, until his death.

Thus the defendants permitted the change in question, and because of that change made the payment to Mrs. Adams, with full knowledge that the policy had been delivered to Butler; that the rights of the beneficiary thereunder had vested, and that, consequently, Adams' subsequent possession of the instrument was transient and incidental, having no relation to personal ownership and conferring no right to vary the precise terms of the obligation. Such payment can have no bearing upon their obligation to pay in accordance with the terms of their contract.

The claim that a new trustee should have been appointed in Massachusetts is without force, for two reasons: First. Because adequate provision *is* made in the policy "for supplying the vacancy," to quote the Massachusetts statute, caused by Butler's death, namely, that the insurance money should be paid in that event to his personal representative; and, second, because the question relates to the remedy and is governed by the *lex fori.* Here, too, the *cestui que trust* is the real party in interest, and she is before the court by her guardian *ad litem.* The trust is a mere naked trust, and the trustee has no duty thereunder save to receive the

insurance money and pay it over to the guardian of the infant beneficiary for the latter's benefit.

In our judgment, the defendant is now, for the first time, lawfully called upon to perform its contract, and the judgment requiring such performance was right and should be affirmed, with costs.

VAN BRUNT, P. J., concurred.

Judgment affirmed, with costs.