In the Matter of the Judicial Settlement of the Estate of BENJAMIN F. JOHNSON, Deceased.

Surrogate's Court, Orleans County, February, 1925.

**Insurance — life insurance — group life insurance policy taken out by employer for benefit of employees — certificate issued under policy named employee's wife as beneficiary — indorsement subsequently made upon policy without knowledge of employee or beneficiary providing that if employee survived beneficiary proceeds should be paid to executor or administrator of employee's estate — wife predeceased insured employee leaving two children — indorsement did not affect rights of beneficiary or her estate — policy, though renewed from year to year, deemed continuation of original policy — insurance company without power to change beneficiary without her consent — proceeds of policy passed to estate of beneficiary — Surrogate's Court has jurisdiction to pass upon claim of beneficiary's children pursuant to Surrogate's Court Act, § 40 — claim for proceeds should be made by administrator of beneficiary's estate in their behalf.**

The rights of a beneficiary under a group life insurance policy taken out by an employer for the benefit of his employees for one year, with the privilege of a . renewal from year to year for ten years without changing its terms or the

premium, under which a certificate was issued to an employee for the benefit of his wife, the beneficiary, are not affected by an indorsement made on the policy subsequent to its issuance to the effect that if the employee should survive the beneficiary originally designated in the policy, the insurance should be paid when due to the executors, administrators or assigns of such employee, where the indorsement was not made with the knowledge or consent of the beneficiary or the employee. Moreover, the employer did not have the right to change the beneficiary or alter the terms of the policy without the consent of the beneficiary.

Although the policy was for a period of one year with a privilege of renewals from year to year by the payment of each yearly premium, the effect of this provision was not to make a new policy each year, but to continue the original policy according to its terms as issued. The insurance company was without power to change the beneficiary without her consent, in view of the fact that when it delivered the policy to the employee it delivered also a certificate bearing the same date, which after describing the provisions of the policy generally, designated the employee's wife as beneficiary.

Accordingly, where the beneficiary named in the certificate delivered to the employee predeceased the employee without consenting to the indorsement of the policy, the proceeds thereof upon the death of the employee passed to the estate of the beneficiary.

Pursuant to section 100 of the Decedent Estate Law, one-third of the proceeds of the policy which passed to the estate of the beneficiary will go to the estate of the employee, the husband of the beneficiary, and the remaining two-thirds to the children of the beneficiary.

The Surrogate's Court has jurisdiction to pass upon the claim of the beneficiary's children pursuant to section 40 of the Surrogate's Court Act but their claim must be presented by the administrator of the beneficiary's estate and not by the children themselves.

PROCEEDING for judicial settlement of account of administrator who has received payment of proceeds of life insurance policy on life of deceased. Objection by special guardian of children of deceased wife to payment of proceeds of insurance to next of kin of Benjamin F. Johnson.

*William H. Munson*, in person, as administrator.

*Bertram E. Harcourt*, special guardian, for infant children Kenneth Johnson and Thelma Johnson.

*Knickerbocker & Sturgis*, for Margaret Mason, a next of kin.

*Gurdon W. Fitch*, for Gertrude Mullin, William Johnson, John Johnson and Anna Christian, next of kin.

FLUHRER, S.:

The Central Foundry Company of Medina, N. Y., for the benefit of its employees (including the intestate), took out a policy of life insurance in the Travelers Insurance Company of Hartford Conn., dated January 1, 1918, providing that upon the death of any employee it would pay to the beneficiary of such deceased

employee a certain amount of insurance ranging from $500 to $1,500 according to the length of service of such employee. It was provided in the policy that the schedule of employees, attached thereto (which included the name of the intestate), might be amended from time to time by adding the names of new employees. Attached to the policy, and forming a part thereof, was a schedule of premium rates to be paid by the employer on behalf of the employees, such rates differing according to the ages of the respective employees. It was provided by the terms of such policy that payment upon the death of any employee was to be made thereon provided such death " shall occur during the continuance of this contract and within one year from the date this insurance shall become effective, or from the date of any renewal hereof." Such policy also contained a clause that such contract " may be renewed from year to year at a premium to be computed by the company at the commencement of each year *according to the schedule of rates attached hereto*, provided such premium shall be paid on or before the 1st day of January in each year, but the company may, at the end of ten years from the date hereof and at the end of each succeeding ten year period, change the premium rates for the insurance hereunder."

Concurrently with the issuance of such policy the insurance company issued a certificate bearing the same date and containing the following clause: " This is to certify that under and subject to the terms and conditions of a group contract of insurance No. G374, issued and delivered to the Central Foundry Company (hereinafter called the assured) by the Travelers Insurance Company, Hartford, Connecticut, the life of Benjamin Johnson (hereinafter called the employee) is insured initially for the sum of $1500 payable to Celia Johnson, wife, as beneficiary if death shall occur while an employee of the assured during the continuance of said contract. The insurance provided for by said contract terminates with the termination of employment with said assured."

This certificate was delivered to the insured, Benjamin Johnson, apparently shortly after its issuance. Presumably such a certificate was issued to each of the employees of the Central Foundry Company. Such policy continued in force from year to year thereafter by the payment of the necessary premiums by the Central Foundry Company. Thereafter, on October 13, 1921, an indorsement, executed by the Travelers Insurance Company, was attached to such policy then in the possession of the Central Foundry Company. This indorsement provided that any insured employee could at any time change the beneficiary by a written request on the company's blank furnished for that purpose; and also provided: " If any employee shall survive the beneficiary or beneficiaries originally

designated, or subsequently nominated, as herein provided, the insurance, or the share of the deceased beneficiary or beneficiaries as the case may be, shall be paid when due to the executors, administrators or assigns of such employee." The original beneficiary, Celia Johnson, wife of Benjamin Johnson, whose life was insured, died intestate on June 1, 1922, leaving two children born of said marriage with Benjamin Johnson. Benjamin Johnson died on February 21, 1923. In addition to such two children he left five other children born of a former marriage. Pursuant to the indorsement made upon such policy the insurance company paid the full amount of the policy, covering the life of Benjamin Johnson, to his administrator who has included such sum in his account herein and has asked for the judicial settlement thereof. The special guardian of the two children of the deceased wife has filed objections to the payment by such administrator of the proceeds of such insurance policy to the next of kin of Benjamin F. Johnson, and makes claim on behalf of such infants for such portion of the proceeds of such policy as they would have received if it were a part of the estate of the deceased wife. It is claimed by the special guardian that such wife never consented to the making of the indorsement which provided that if any employee should survive the beneficiary designated in the certificate, then the share of the deceased beneficiary would be payable to the executors, administrators or assigns of the employee.

It is, of course, a settled rule of law that if one takes out insurance on his life payable to another, such insurance is irrevocable so far as the person taking out the insurance is concerned, and the beneficiary has a direct interest in the policy which can only be transferred by an assignment duly executed by such beneficiary. (*Stilwell* v. *Mutual Life Insurance Co.*, 72 N. Y. 385; *Fowler* v. *Butterly*, 78 id. 68; *Garner* v. *Germania Life Ins. Co.*, 110 id. 266; *Butler* v. *State Mutual Life Assurance Co.*, 55 Hun, 296; affd., 125 N. Y. 769; *Shipman* v. *Protected Home Circle*, 174 id. 398, 407; *Washington Central Bank* v. *Hume*, 128 U. S. 195.)

It is claimed on behalf of the children of Benjamin F. Johnson by his former wife that the insurance policy in question was only from year to year; that it was not taken out by Benjamin F. Johnson, but that it was taken out by his employer which had the right at any time to stop paying the premiums and thereby terminate the policy. Although the policy is renewable from year to year, the original policy is continued in force by the payment of the premiums. There was no option in the policy that gave the Central Foundry Company the right to change the beneficiary or to alter the terms of the policy. If such company saw fit to terminate

the policy at the end of any year and take out a new policy with new conditions, such company would have been subject to the payment of increased premiums if the insurance company saw fit to impose them. The original policy stated that it was renewable from year to year upon the payment of the premium mentioned in the schedule of rates in the policy. So long, therefore, as the Central Foundry Company continued to pay such premium it was continuing in force the original policy according to its terms as issued. In view of the fact that the insurance company when it delivered the policy of insurance to the Central Foundry Company also delivered to Benjamin F. Johnson, whose life was insured, a certificate naming the wife, Celia Johnson, as beneficiary, the insurance company was without power to change the beneficiary without the consent of such beneficiary. Even though the policy was renewed from year to year with such indorsement upon it, there is no proof that either Celia Johnson, the beneficiary, or Benjamin F. Johnson, whose life was insured, ever knew that such an indorsement had been attached to the policy originally issued and of which provisions he was deemed to have knowledge. After the issuance of the policy of insurance and the certificate of designation of the wife as beneficiary, Benjamin F. Johnson continued in the employ of the Central Foundry Company and had a right to assume that the policy that had been taken out upon his life for the benefit of his wife continued in force according to its original provisions. It may be that he would have entered the employ of someone else at a better wage but for the fact that his life had been insured by such company for the benefit of his wife. Nor is the situation changed because of the fact that the Central Foundry Company could have discontinued paying the premiums at the end of any one year, so that the policy would have been thereby terminated. In *Garner* v. *Germania Life Insurance Co.* (110 N. Y. 266) there was a failure to pay premium upon the original policy, and a new policy with a new beneficiary was taken out by the insured in its place. The court held that the taking out of a new policy was in all respects a continuation and renewal of the old policy, altered only by the substitution of a new beneficiary, and that what the insured had done for the benefit of the assured it could not undo without the consent of the assured, nor take from the assured what was already his.

It is claimed, however, on behalf of Benjamin F. Johnson's children by his former wife, that even if Celia Johnson, the beneficiary, had such an interest in the policy as could not be taken away from her by the indorsement upon the policy, nevertheless, owing to the fact that the designated beneficiary predeceased her

husband, the proceeds of the policy passed to the husband who had the right to assign or otherwise dispose of the same and that if he failed to do so, his personal representative might enforce the obligation of the insured.  It has been held that where the wife was the sole beneficiary, her interest in a policy was a chose in action which passed upon her death to her husband.  (*Olmsted* v. *Keyes*, 85 N. Y. 593.)  But the beneficiary in that case died before the enactment of chapter 782 of the Laws of 1867 making a radical change in the distribution of the estates of married women.  Before the enactment of the present Statute of Distributions, upon the death of a wife intestate her separate estate and choses in action, so far as she did not have the right to dispose of the same by will, belonged to her husband in case he survived her.  (*Roosevelt* v. *Ellithorp*, 10 Paige, 415.)  When this was the rule the only object in requiring letters of administration upon her estate was to have some responsible person who might be answerable to her creditors if there should be any.  If the husband survived the wife and died, either before or after taking out letters of administration on her estate, leaving any assets of his wife unadministered, such assets passed to his executors or administrators but were liable for her debts to her creditors in preference to the creditors of the husband.  (*Lockwood* v. *Stockholm*, 11 Paige, 87.)

Under section 202 of the Surrogate's Court Act (formerly Code Civ. Proc. § 2672) choses in action are deemed to be assets and go to the executors or administrators to be applied and distributed as part of the personal property of the intestate.  This provision became effective by statute on January 1, 1836.  (R. S. 1836, pt. 2, chap. 6, tit. 3, §§ 6–8.)  But the Statute of Distributions prior to 1867 was governed by the following provision of title 3, chapter 6, part 2, of the Revised Statutes:

" § 79. The preceding provisions respecting the distribution of estates, shall not apply to the personal estates of married women; but their husbands may demand, recover, and enjoy the same, as they are entitled by the rules of the common law."  (2 Edm. Stat. at Large [1863], 101, § 79.)

By the amendment made by section 11 of chapter 782 of the Laws of 1867, the above provision was amended to read as follows:

" § 79. The preceding provisions respecting the distribution of estates shall apply to the personal estates of married women dying, leaving descendants them surviving; and the husband of any such deceased married woman shall be entitled to the same distributive share in the personal estate of his wife to which a widow is entitled in the personal estate of her husband, by the provisions of this chapter, and no more."

This provision continued in force until 1919, when section 100 of the Decedent Estate Law was amended (Laws of 1919, chap. 295) by striking out the words " dying, leaving descendants them surviving." Therefore, from 1867 until the amendment in 1919, the husband (in case the wife died intestate leaving no descendants) became entitled upon the wife's death to all of her personal property, including choses in action. (*Robins* v. *McClure*, 100 N. Y. 328.) An examination of *Olmsted* v. *Keyes* (85 N. Y. 593, cited above) shows that in that case, although the beneficiary (the wife of the insured) left children surviving, she died before the amendment of 1867 which changed the common law as to the distribution of the estates of married women. So that that case cannot be deemed to be an authority in the case at bar.

Great stress is laid by counsel upon the case of *Waldheim* v. *Hancock Mutual Life Ins. Co.* (8 Misc. 506), but it would seem as though the court in that case must have overlooked the change made in the statute in 1867, which rendered the case of *Olmsted* v. *Keyes* (*supra*) no longer applicable except in cases in which, until 1919, the wife died intestate leaving *no descendants*.

In this case, therefore, the proceeds of the insurance policy were a part of the estate of the wife, Celia Johnson, and pass to her personal representatives.

The question arises as to the jurisdiction of this court to pass upon the claim of the infant children represented by the special guardian. In making claim to the proceeds of the insurance policy, they have no standing in this court for the reason that only an administrator of their mother's estate can make such a claim. The question also arises as to the jurisdiction of this court to pass upon such a claim. Because of the amendments made to the provision now found in section 40 of the Surrogate's Court Act in 1914 and 1921, I believe that this court has jurisdiction to pass upon such a claim. (*Matter of Van Buren* v. *Estate of Decker*, 204 App. Div. 138; *Matter of Ungrich*, 115 Misc. 762.) The court in *Matter of Hyams* (237 N. Y. 211), in passing upon the question as to whether the Surrogate's Court had power to determine the title to property that was not owned by the decedent in his lifetime, very clearly had reference to property to which neither the decedent at any time before his death, nor the personal representative since his death, had ever had possession or title. Certainly if the property involved in that case had been the proceeds of a policy which in its inception was payable to the estate of the decedent, his administrator would have had authority to administer and distribute the proceeds. Certainly the court, in *Matter of Hyams*, did not intend to deny the right to a personal

representative to administer such a fund. If an administrator, under such circumstances, has the right to administer such a fund, then the court in the case at bar, under the provisions of section 40, has jurisdiction of the subject-matter now before it. Especially is that true in view of the facts that the insurance company actually paid the proceeds of the policy to the administrator in accordance with the indorsement made upon the policy, the administrator has included such sum in his account for distribution, and all the interested persons are or will be parties to this proceeding.

As the special guardian's wards are parties to this proceeding and would be entitled to the greater part of the proceeds of this policy provided the claim is made on their behalf by the administrator of their mother's estate, a reasonable opportunity will be given to such administrator to file and enforce herein a claim for the proceeds of the policy.